# McCormick, Appellant, *v.* Hanover Township.

*Muncipalities—Townships—Contracts—Powers of supervisors— Governmental powers—Business powers—Right to employ counsel —Duration of contract for legal services—Act of March 21, 1911, P. L. 8—Improvident contracts—Ultra vires act of supervisors— Judgment for defendant n. o. v.*

1. Municipalities, no matter how high their grade, can exercise no powers save those for which there is express statutory authority or such as are necessary to the exercise of their corporate powers and which are therefore implied.

2. There is a clear distinction between the governmental and business or proprietary powers of municipalities. With respect to the former, their exercise is so limited that no action taken by the governing board is binding upon its successor, whereas the latter are not subject to such limitations and may be exercised in a way that will be binding upon the municipality after the members of the contracting board have gone out of office.

3. From the fact that townships may sue and be sued, power to employ counsel is implied, and this power they may exercise as occasion arises or they may engage counsel for a term as the judgment of the supervisors may determine, but in engaging counsel, supervisors are acting as the agents of the township and are exercising the governmental as distinguished from the proprietary or business function of the municipality.

4. A contract between the supervisors of a township and an attorney for legal services to be rendered by the attorney for a term to begin after the commencement of a new fiscal year, when a board otherwise constituted would be in office, is beyond the power of the contracting board and is invalid. The fact that under the Act of March 21, 1911, P. L. 8, one member who ordinarily would have retired at the expiration of such year was empowered to act for another year, does not prevent the application of the rule.

5. A contract between a township and an attorney for the rendition of legal professional services by the latter which is so extravagantly improvident under the circumstance that it is to be condemned as an unwarranted exercise of power, is unenforceable.

6. In an action to recover salary alleged to be due under a written contract entered into by plaintiff with the supervisors of a township, dated December 15, 1910, whereby the township engaged plaintiff and another attorney to act as counsel for the next ensuing fiscal year, beginning in March, at a salary of $2,500 each, it appeared that the constitution of the board of supervisors would have been changed in March, 1911, by the expiration of the term of service of one supervisor, to whose place a newly elected supervisor would have succeeded had it not been for the extension of his term by the Act of March 2, 1911, P. L. 8; that at the time when the contract was made, the attorney stood in the relation of counsel to the board under a then existing and uncompleted contract; that there was nothing in the situation calling for haste in the selection of counsel and it did not appear that anything was anticipated which would require of counsel service commensurate with the salary paid. The jury found a verdict for plaintiff for the amount of his claim. *Held,* the court did not err in entering judgment for defendant n. o. v.

Argued April 15, 1914. Appeal, No. 88, Jan. T., 1914, by plaintiff, from judgment of C. P. Luzerne Co., June T., 1912, No. 366, for defendant n. o. v. in case of Peter J. McCormick v. Township of Hanover. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover salary alleged to be due under a written contract. Before STRAUSS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,687.50. The court subsequently entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*F. W. Wheaton,* with him *Abram Salsburg* and *Frank T. McCormick,* for appellant.—A public official who is charged with duty relating to the business affairs of a public district is entitled to employ counsel to protect that district in those matters which are in line with the duty imposed on the official: Lycoming County Comm'rs

v. Hall, 7 Watts, 290; McCalmont v. Allegheny County, 29 Pa. 417; Venango County v. Durban, 3 Grant. 66; Carr v. Foster Twp., 11 Kulp 270; Allegheny County v. Watts, 3 Pa. 462; Bohan v. Pittston Twp., 4 Kulp 234; Wagner v. Hazle Township, 215 Pa. 219; Northampton County v. Steele, 1 Mona. 582; Allegheny County v. Western Penna. Hospital, 48 Pa. 123; Smith v. Mayor, 13 Cal. 531; Chester County v. Barber, 97 Pa. 455.

*John D. Farnham,* with him *Charles B. Lenahan* and *T. F. McLaughlin,* for appellee.—The action of the supervisors in authorizing and entering into the contract with the plaintiff was ultra vires: Bechtel v. Fry, 217 Pa. 591.

OPINION BY MR. JUSTICE STEWART, July 1, 1914:

The board of supervisors of Hanover Township, a township of second class of Luzerne County, by written contract dated 15th December, 1910, engaged the plaintiff and another as counsel for the next ensuing fiscal year beginning with the first Monday in March, 1911, at a salary of $2,500.00 for each. The appellant not having been paid any part of the salary stipulated for in the contract, brought the present action to recover. The township defended on the ground that the contract on part of the supervisors was ultra vires; and on the further ground that it had been abrogated by a subsequent contract entered into between the same supervisors and a tax payer for the repair of the roads during the fiscal year, pursuant to the provisions of the Act of 12th June, 1893. The trial resulted in a verdict for the plaintiff for the full amount of the claim, which on motion was set aside, and judgment non obstante was thereupon entered for the defendant. In his opinion filed, the learned trial judge sustained the second objection urged by defendant, and held that the later contract for the repair and maintenance of the public roads with a tax payer abrogated the earlier one with the plaintiff, inasmuch as by the later contract, under the

Act of Assembly authorizing it, the duty and burden of engaging and compensating counsel was imposed on the contracting tax payer.  The opinion leaves little room to doubt that the first objection would have been sustained as well, but for the fact that plaintiff did, notwithstanding, render professional services during the time provided for in the contract.  The acceptance of such service by the board of supervisors was held by the court to be a ratification of the contract.  The conclusion we have reached is unaffected by this feature of the case, and discussion of it is therefore unnecessary.  We shall confine ourselves to a consideration of defendant's first objection.  Was the contract made with the plaintiff within the scope of the powers of the supervisors?  We are of opinion that it was not, for the following reasons: First, because the contemplated employment of the plaintiff was for a term to begin after a new fiscal year had been entered upon during which, except for the unusual conditions here existing, a board otherwise constituted than this would have been in office; and second, because the contract was so extravagantly improvident in view of the circumstances disclosed, that it is to be condemned as an unwarranted exercise of power.  As to the first, it is an undisputed rule that municipalities, no matter how high their grade, can exercise no powers save those for which there is express statutory authority, or such as are necessary to the exercise of their corporate powers, and are therefore implied.  While to some of higher grade the power to employ counsel is expressly given, as in the case of cities and boroughs, no such power is given to townships; but our own cases are frequent in which the implied power in townships to engage such services is fully recognized.  When express authority is given the rule of strict construction prevails, not to the extent of defeating the plain purpose of the grant, but to the end that the grant may not be extended to embrace what is not clearly implied as a necessary means to its efficient operation.  So, when what is relied upon is an implied

grant of power the same rule prevails, and that particular power can be conceded only when it clearly appears necessary to carry out the duties or obligations expressly or impliedly imposed. Because townships may sue and be sued we have repeatedly held that it is within their implied power to employ counsel; and this they may do as occasion arises, or engage counsel for a term, as the judgment of the supervisors may determine. In engaging counsel supervisors are acting as the agents of the township, and are exercising a governmental as distinguished from a proprietary or business function, a distinction to which we shall refer later. That the contract in the present case was for services to be rendered during an entire year does not in itself therefore expose it to adverse criticism; but, associated with this is another feature which is of fatal significance. The contract was entered into, 15th December, 1910. The year's service was to begin the first Monday of March, 1911, when the new fiscal year next ensuing was to begin. Under usual and ordinary conditions a board of supervisors changes with each fiscal year by the expiration of the term of service of one supervisor, to whose place a newly elected supervisor succeeds. Therefore the contract with the plaintiff was for the services to be rendered under a succeeding administration which was thereby denied the right of choosing its own legal assistants. That this was in excess of the power of the contracting board is established by abundant authority. A very apposite case in this connection is that of Jay County Board of Commissioners v. Taylor, 123 Ind. 148. It was there held that where a board of county commissioners attempts to employ a legal adviser for a period of three years, to commence three months in the future, and after the time for the election of a person to fill the vacancy caused by the expiration of the term of office of one member of the board, the term of employment extending over a period during which all the members of the board as constituted at the time of the contract will retire there-

from unless re-elected, such contract is against public policy and void. The decision in the case referred to rests on the clear distinction, universally recognized, between the governmental, and business, or proprietary, powers of municipalities. With respect to the former, their exercise is so limited that no action taken by the governing body is binding upon its successor, whereas the latter are not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising it shall have ceased to exist, as for example, in the case of contracts for the supply of water in boroughs and the making and repairing of roads in townships. In State v. Hudson, 27 N. J. L. 214, it is held that where the nature and character of an office of employment is such as to require a municipal board or officer to exercise a supervising control over the appointee or employee, together with the power of removal, such employment or contract of employment by the board in the exercise of the governmental function, and contracts relating thereto must not be extended beyond the life of the board. In Omaha Water Co. v. Omaha, 147 Fed. Repr. 1, Chief Justice SANBORN uses this language,

"Thus, when a contract involves and relates to governmental or legislative functions of the board making it, or involves a matter of discretion to be exercised by the board, unless the statute conferring power to contract clearly authorizes a board to make a contract extending beyond its own term, no power of the board so to do exists, since the power conferred upon boards to exercise legislative or governmental functions is conferred to be exercised as often as may be found needful or politic, and the board presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors."

The contention on part of appellant is that though this rule be conceded, it is without application here,

since the persons who constituted the next succeeding
board of supervisors were the same, the term of the one
supervisor who would have gone out of office in the
spring of 1911 having been extended by Act of March
21, 1911, P. L. 8, the object of which was to prevent any
hiatus in the term of office because of certain proposed
amendments to the Constitution. A sufficient answer to
this is, that the contract under consideration was en-
tered into prior to this enactment, and its legality is to
be determined by conditions then existing. When the
contract was entered into the board of supervisors was
proposing by its action to bind a succeeding administra-
tion, which, so far as it knew or could know, would be
differently composed. The mere fact that the one mem-
ber who ordinarily would have retired with the ex-
piration of his term was subsequently empowered to act
for another year, cannot exempt from the application of
the rule. To allow such exceptional circumstances to so
operate would be to sacrifice principle in order to vali-
date a contract which when entered into was unmistak-
ably ultra vires. The objection we have been consider-
ing is fatal to the plaintiff's case; the contract was
ultra vires, and therefore incapable of ratification.

The invalidity of the contract for the second reason
above indicated is quite as apparent. The circumstances
existing at the time the contract was entered into here
call for remark. We have adverted to the fact that it
was executed three months in advance of the period when
any service would be required of the plaintiff. Another
fact, not without significance, is that it was executed
at a time when plaintiff stood in relation of counsel to
the board under a then existing and uncompleted con-
tract. So far as appears there was nothing in the situ-
ation calling for haste or expedition in the selection of
counsel. Nor was there in anticipation anything that
would require of counsel employed exceptional service.
So far as could be foreseen nothing out of the ordinary
and usual business would call for counsel's assistance

and service; on the contrary, the board and counsel faced a contingency certainly to be anticipated which, if it occurred—and it did occur—would very materially lighten the duties of the supervisors and correspondingly lessen the labor and responsibility of counsel. The parties are held to the knowledge of the fact that under the provisions of the Act of June 12, 1893, P. L. 451, any tax payer of the county could, before the beginnning of the next fiscal year, with the approval of the court, acquire the right to furnish all the material and labor necessary for the opening, making and repairing the highways and bridges of the township, thus relieving the supervisors from all duties and responsibility in connection therewith, except that it would remain for them to view and inspect the making and repairing of the roads done under the tax payer's contract at least once every month, and satisfy themselves that the work had been The act requires of the contracting tax payer that he faithfully done before final settlement should be made shall first give bond with approved security for the faithful performance of his contract and the saving harmless the township from any loss or claim by reason of his failure to perform his contract; and it further provides for the selection by the supervisors of counsel and the payment of a salary of $50.00 to such counsel by the contractor. In the legislative mind the salary of $50.00 per annum was adequate compensation for services rendered by counsel—let us say to the contracting tax payer exclusively, though it is nowhere so written in the act. In the estimation of the supervisors as we see by this contract, aside from the service rendered to the contractor who has all the actual duties to perform of making and repairing the roads and bridges, the additional service to the supervisors whose duties were largely confined to inspection, could only be adequately compensated by a year's salary of $5,000. Certainly a contract for a salary in such amount, in view of the situation under which this was made, calls for close scrutiny.

Not only so, but when it is challenged in a court, it can be sustained only as it can be shown to be reasonable because of unusual and extraordinary conditions. We need no other authority than the case of Chester County v. Barber, 97 Pa. 455. There was no pretense here that unusual or extraordinary circumstances existed, while the particulars of the service rendered by plaintiff and his colleague, as testified to by himself, would satisfy any professional mind that the service in character and amount bore no reasonable relation to the salary stipulated for. The services rendered included the trial of one negligence case against the township, and frequent consultations with reference to ordinary current business, but nothing more. Upon a careful review of the case we have no hesitancy in saying that the contract was for a salary unconscionable in amount and that to this extent it contravened public policy. We follow the case of Chester County v. Barber, 97 Pa. 455, where this court in passing upon a contract with counsel said,

"We rest our decision upon the broad ground that the commissioners had no power to bind the county by such a contract; that it was against public policy, and therefore null and void.......These commissioners were acting in a fiduciary capacity. They were but trustees of the money, when received, for the use of the county. When, therefore, they contracted to give one-half of it to the plaintiffs for their services, they exceeded their power. They were giving away what did not belong to them. As well might a trustee contract to give away one-half of the trust estate as a compensation to counsel for services in connection therewith, and if he give him one-half, why not three-fourths, or even a greater proportion? Can it be doubted that a court of equity would strike down such a contract as improvident and a legal fraud?"

We have adverted to the fact that, notwithstanding the circumstances referred to, plaintiff and his associates did under the terms of their employment render profes-

sional services to the supervisors during the fiscal year covered by their contract. In view of this fact, in order that plaintiff might recover for the value of such service, the trial judge offered him an opportunity, before the case was concluded, to amend his statement. This plaintiff declined, preferring to stand on his contract and take the risk. If it now results that for these services there can be no recovery on the basis of a quantum meruit, the responsibility for such result must rest with the plaintiff himself. The assignments of error are overruled and the judgment is affirmed.