## Talisman Development Corporation v. Board of Supervisors of Lower Nazareth Township

*Charles J. Fonzone*, for plaintiff.
*Gregg E. Mayrosh*, for defendant.

FREEDBERG, *J.*, October 20, 1981—This matter is before the court on two complaints which were consolidated for trial. The initial complaint was filed by Talisman Development Corporation (Talisman) against the Board of Supervisors (board) of Lower Nazareth Township (township). This complaint in assumpsit alleged that the board and its individual members were liable for monies expended and to be expended for the paving of roads in Talisman's development. Defendants demurred to the complaint, and the demurrer was sustained as to the board members in their individual capacities. The board answered and counterclaimed for $94,502.59—the sum allegedly representing the estimated cost of completing various subdivision improvements, including the aforementioned road work. The board also filed an action in equity to (1) compel Talisman to complete improvements, (2) enjoin Talisman from any further development or construction until the various subdivison improvements were made, and (3) enjoin Talisman from conveying any parcels within the subdivison.

These matters were tried, without a jury, before Freedberg, J., whereupon this decision is entered.

## FINDINGS OF FACT

1. In November, 1969, the board adopted a resolution whereby the township agreed to pave streets in new developments.

2. In the early part of 1972, Talisman was formed and the final plan of a proposed subdivision in Lower Nazareth Township was submitted to the board.

3. Said subdivision was known as Georgetown Manor, and consisted of 55 lots and four principal roads: Brandywine, Concord, Lexington, and King George Drive.

4. On March 1, 1972, the board rescinded its prior resolution of November, 1969, which had allowed for street paving by the township in new developments. In so doing, however, the board specifically excepted four developments, including Georgetown Manor, which were already underway. As to these four, the resolution provided that the township would pave the subdivision streets as long as such streets were readied for paving within five years of March 1, 1972.

5. The board clearly intended that the streets of Georgetown Manor would be accepted for public use.

6. On March 22, 1972, Talisman's final plan for Georgetown Manor was approved by the board.

7. At the time this approval was granted, Talisman had neither posted security to guarantee the installation of subdivision improvements, nor had the improvements been completed by them.

8. In approximately May, 1972, Talisman commenced physical work on Georgetown Manor.

9. The paving process required an initial application of bituminous material as a binder, and a second application of bituminous material as a topping.

10. The paving of the four subdivision roads was to be done in three stages:

1st Stage: the westerly one-third of King George Drive and the entirety of Brandywine Road;

2nd Stage: the middle one-third of King George Drive and the entirety of Concord Road;

3rd Stage: the easterly one-third of King George Drive and the entirety of Lexington Road.

11. The first stage of paving was fully completed by the township. The binder was laid in August, 1973, the topping was laid during the summer of 1979.

12. By letter dated August 23, 1973, the township solicitor notified Talisman that the township's prior undertaking to pave subdivision roads was ultra vires and, therefore, would not be honored in the future.

13. The dedication of the roads paved in the first stage was officially accepted by Township Resolution No. 1-1974 of January 9, 1974, and confirmed by order of the Court of Common Pleas, Northampton County, Pennsylvania, Criminal Division, No. 14-M January term, 1974, on January 30, 1974.

14. Between July and September, 1977, Talisman placed a binder on the roads of stages two and three of the paving plan.

15. Talisman asserts that the total cost in applying this binder to the roads of stages two and three of the paving plan was $34,841.91.

16. Talisman has asked to be reimbursed for the application of binder to the roads of stages two and three in the amount of $22,254 rather than the total cost of $34,841.91.

17. The fair and reasonable cost of installing binder to the roads of stages two and three was $15,100.

18. Talisman is not seeking damages for the cost of laying a bituminous topping to the roads of stages two and three.

19. There was no agreement between the township and Talisman with respect to the development of Georgetown Manor other than the final plan and a formal agreement which pertained to the grading of lawns on various lots.

20. The clogged state of storm sewer inlets, observed during a May, 1979, inspection, was due to the incompleted state of the paving of roads in stages two and three.

21. Roadway swales were neither depicted in the final approved plan, nor agreed to in writing by Talisman.

22. Talisman used corrugated pipe in place of concrete pipe that was designated by the final approved plan.

23. This use of corrugated rather than concrete pipe was not allowed as a substitution by the applicable PennDOT regulations.

24. The cost of replacing the corrugated pipe with concrete pipe is $4,449.60, plus 10 percent for engineering.

25. Concrete monumentation of all road curves was required by ordinance at the time of formal plan approval.

26. The cost of installing concrete monumentation at all road curves is $1,350, plus 10 percent for engineering.

27. As of April, 1979, Talisman owned none of the lots of Georgetown Manor.

## DISCUSSION

### I. Assumpsit Action By Talisman

The first issue presented in this case is whether

the resolution of the board on March 1, 1972, was an ultra vires act. That resolution obligated the township to pave the roads of the Georgetown Manor Development.

Initially, it must be observed that courts are ordinarily reluctant to interfere with the actions of municipal officials. The decisions of township commissioners and municipal authorities will not be disturbed without a clear abuse of their permissible discretion in acting: Goodman Appeal, 425 Pa. 23, 227 A. 2d 816 (1967). This wide reign of municipal authority power is not, however, without confines—broad discretion is allowed only within strict legal limits. While second class townships have been specifically empowered to let contracts, 53 P.S. §65801, municipal contracts beyond the scope of express statutory authority or those powers necessary to the exercise of corporate powers are void: McCormick v. Hanover Twp., 246 Pa. 169, 92 A. 195 (1914). Furthermore, settled municipal law has established that persons contracting with a municipal corporation must inquire, at their peril, into the power of the municipal corporation to make the contract: Trevorton Water Supply Co. v. Zerbe Township, 259 Pa. 31, 102 A. 328 (1917); Foresman v. Gregg Township, 297 Pa. 369, 147 A. 64 (1929).

The board's resolution by its terms binds the township to pave the streets. The board argues that the resolution is unlawful as ultra vires and, therefore, is unenforceable. Specifically, the board claims that its contract to pave the streets of Georgetown Manor was void for two reasons: first, the contract required the expenditure of public funds for the benefit of a private developer; and second, the contract violated general municipal law.

As to the board's first contention, the underlying

assumption that this contract was solely to benefit the private developer is fallacious. Clearly, the streets of the development were always intended to become public roads. If an owner of land subdivides it into lots and streets on a plan, he is presumed to have dedicated the streets to public use if he records the plans, or sells lots according to it: Tri City Broadcasting Co. v. Howell, 429 Pa. 424, 240 A. 2d 556 (1968); Reed v. Reese, 473 Pa. 321, 374 A. 2d 665 (1976). The dedication by Talisman was officially accepted by the township as to the westerly one-third of King George Drive and the entirety of Brandywine Road. More significantly, the township's acceptance attached at the instant it commenced paving these streets, since acceptance of streets may be manifested by the municipality's assumption of control, improvements, repair, or expenditure of monies on them: 11 P.L.E. Dedication §15. Thus, the township accepted the implied dedication to public use at the precise moment it commenced work on them. Moreover, the township's agreement to pave the streets of the development which all parties agreed were to become public, was a reasonable inducement to encourage development in the township. Finally, we have found as a fact that acceptance for public use was plainly the intention of the board.

Therefore, the board's argument that the resolution to pave Georgetown Manor roadways was ultra vires because it intended private gain is without foundation.

The remaining leg of the board's ultra vires argument is that the contract was formed in direct violation of general municipal law. The board relies upon the Act of July 31, 1968, P.L. 805, Art. V, §509, which as of March, 1972, provided:

No plat shall be finally approved unless the streets shown on such plat have been improved as may be required by the subdivision and land development ordinance and . . . have been installed in accordance with such ordinance. In lieu of the completion of any improvements required as a condition for the final approval of a plat, the subdivision and land development ordinance may provide for the deposit with the municipality of a corporate bond, or other security acceptable to the governing body in an amount sufficient to cover the costs of any improvements which may be required. Such bond, or other security shall provide for, and secure to the public, the completion of any improvements which may be required. . . . 53 P.S. §10509.

The apparent purpose of this statute is to protect the municipality from situations where developers have started work on their projects, but are either unable or unwilling to complete the improvements required by local ordinances. The statute attempts to abolish this predicament by directing that before final approval can be granted, either the required improvements are completed or they are guaranteed by bond.

In the case at bar, final plan approval was granted without either the completion of required improvements or the deposit of a bond for such purposes. The reason for this is that the township had committed to completing the street work, a commitment which we have found to be lawful. Such a situation is beyond the contemplation and application of the statute—to require a municipality to provide protection against itself is absurd; to the board proved breach of an obligation on the municipality would be improper. Thus, 53 P.S. §10509 does not even come into play where a

municipality undertakes, before final approval, to complete required improvements.

Thus, the board's ultra vires argument that this act was in violation of general municipal law is also without merit. The board is liable for its breach.

In determining the amount of damages to be awarded, plaintiff has the burden of proving the extent and amount of his damages, and must do so by establishing facts which furnish a basis for assessment according to legal rule: Rice v. Hall, 315 Pa. 166, 172 A. 289 (1934). The evidence relevant to the assessment of damages is sparse. The only evidence of damages proffered by Talisman is in the testimony of William K. Strohl, who is secretary-treasurer of Talisman. Mr. Strohl testified that Talisman's actual cost in applying the binder was $34, 841.91, but that Talisman was only pursuing recapture of roughly $22,200. Mr. Strohl was not qualified as an expert in the field of road engineering, nor were such credentials ever mentioned. The board, however, presented testimony of its qualified expert, Robert G. Bauer, that the fair and reasonable cost of Talisman's paving in 1977 was $15,100. Since Talisman did not adequately prove its damages in excess of this $15,100 amount, they are bound by this admission of the board as to what the fair and reasonable costs were.

## II. Assumpsit Counterclaim By The Board

The board filed a counterclaim alleging that Talisman failed to install required and agreed upon improvements. The board had an inspection of the development done by township engineer, Robert G. Bauer, and presented as its claim for damages Mr. Bauer's listing of estimates for project completion. This list encompasses damages for: (1) refurbishing the road surface due to wear and tear during the

time the binder layer had been left exposed, (2) application of a topping layer to complete the paving process, (3) re-establishment of existing storm sewer inlets, (4) installation of roadway swales, (5) replacement of a corrugated pipe, and (6) concrete monumentation.

In regard to refurbishing of the road surface and application of a topping layer, it has already been determined that liability for paving falls upon the board. As to re-establishment of existing storm sewer inlets, Mr. Bauer testified that the storm sewer inlets became clogged with mud and debris as a consequence of the unfinished state of the roadways. Thus, financial responsibility for repairing these inlets is upon the board. The next category under dispute, the installation of roadway swales, was never established by the board as a required improvement. Mr. Bauer testified that swales were neither depicted in the final approved plan, nor agreed to in writing by Talisman. Talisman, therefore, cannot be held accountable for the absence of these improvements.

It is only in relation to the last two categories that the board proved breach of an application on the part of Talisman to complete improvements and consequent damages. Talisman used corrugated pipe in place of concrete pipe that was designated by the plan. The use of corrugated rather than concrete pipe was not allowed as a substitution by the applicable PennDOT regulations. Bauer listed the replacement cost for this item as $4,449.60, with an added 10 percent for engineering. Since Talisman has not disputed this cost of replacement, the board is entitled to recover that amount.

Finally, Bauer testified that concrete monumentation of all road curves, as required by ordinance at the time of plan approval, was not done at

the development. The price listed for installation of this item was $1,350, plus 10 percent engineering fee. Talisman did not counter this claim.

Therefore, the board is entitled to $5,799.60, plus 10 percent engineering fees on their counterclaim.

### III. Equity Action By The Board

The equity action is dismissed because the claim for completion of the improvements is properly dealt with as a claim for money damages cognizable at law: Emmaus Borough v. Wilmer R. Schultz, Inc. 50 D. & C. 2d 755 (1970). The application for injunction against further lot sales is moot in view of our finding that no lots remain for transfer.

Therefore, such equitable relief is denied.

### CONCLUSIONS OF LAW

1. The resolution and final plan approval of the board in March, 1972, were not ultra vires.

2. The board is liable to Talisman for Talisman's partial paving of Georgetown Manor roadways in the amount of $15,100, plus interest from October 1, 1977, the date of binder completion.

3. The board established Talisman's liability for failure to use concrete pipe and failure to construct concrete monumentation.

4. Talisman is liable to the board for failure to use concrete pipe and failure to construct concrete monumentation in the amount of $5,799.60, plus 10 percent fee for engineering; i.e., $6,379.56, plus interest from May 23, 1979, the date of Bauer's estimate.

5. Equitable relief is denied for the reasons set forth.

## VERDICT

And now, October 20, 1981, verdict is hereby entered on plaintiff's claim in assumpsit, no. 1979-C-4185, for plaintiff and against defendant in the amount of $15,100 plus interest from October 1, 1977. Verdict is hereby entered on defendant's counterclaim in assumpsit at no. 1979-C-4185, for defendant and against plaintiff in the amount of $6,379.56, plus interest from May 23, 1979. In no. 1979-CE-5541, verdict is hereby entered in favor of defendant and against plaintiff.

The clerk of courts is directed to give notice of the foregoing verdict to counsel for the parties forthwith. If no exceptions thereto are filed within ten days from the date of this verdict, the clerk of courts shall, on praecipe, enter final judgment upon the verdict.