## Scally v. Falls Township

David Grunfeld, for plaintiff.
Richard Hoffman, for defendant.

KELTON, J., April 3, 1987 — The pivotal issue in this case is whether a three-year contract entered into between plaintiff Paul Scally and a previous board of supervisors of defendant township to employ plaintiff as an environmental control officer is or is not valid and binding upon a successor board of supervisors.

Plaintiff has filed suit against the township alleging that the township has breached that contract. After non-jury trial before the undersigned, we held in favor of plaintiff and awarded him damages in the amount of $13,625 plus interest. Following denial of its motion for post-trial relief, the township has appealed to Commonwealth Court. The facts are substantially undisputed.

Testimony at the trial indicated that plaintiff lived in Philadelphia with his wife and two children in a house owned by him and his wife. Plaintiff has a degree in environmental engineering technology from Temple University and has done graduate work in the environmental field at Drexel University. After

his graduation in 1979, he was employed for six years by the Philadelphia Water Department in their industrial waste unit as an industrial waste control technician. His responsibilities were to go to various industries and inspect their premises, including environmental spills, to conduct incinerator inspections, and to carry out related environmental duties. On May 29, 1985, he was employed by Falls Township under an oral employment agreement as an environmental protection officer. The initial terms of his employment required that he become a resident of Falls Township within one year of his apppointment.

After working for about six months, plaintiff expressed to the township manager his desire to have some job security before he committed himself to move from Philadelphia to Falls Township. Thereupon, a written three-year employment agreement was prepared by the township manager and the township solicitor and was approved by the board of supervisors on December 12, 1985, and signed by both the township and plaintiff.

On or about February 11, 1986, plaintiff was notified by the township that his employment was being terminated effective February 25, 1986. Almost immediately thereafter, plaintiff secured new employment with the Delaware River Basin Commission and brought the instant suit to recover for the losses occasioned by the alleged breach of contract.

At the conclusion of the hearing before the undersigned, counsel for the township and counsel for plaintiff each agreed that the principal issue in the case was whether or not plaintiff's employment was in a proprietary function or in a governmental function. The township contended that plaintiff was employed in a governmental function and that it was ultra vires for the outgoing board of supervisors to

enter into a contract which bound the incoming board.

We have found that although the particular label "proprietary" or "governmental" is not necessarily dispositive of the issue, on balance the job is proprietary. In any event, we hold that the entering into a three-year employment contract between the board and plainitiff was not ultra vires. Accordingly, we concluded that the township's post-trial motion objecting to our decision in favor of plaintiff was properly refused and that judgment was properly entered on the verdict.

Assuming the contract was enforceable, the township has made no objection to our calculation of damages.

Before addressing the question of whether or not the job involved proprietary or governmental functions, we would first note that it appears to us that in either event, a three-year contract to supervise the safe operation of a privately operated sanitary landfill is authorized by the Second Class Township Code. As testified to by plaintiff, his principal responsibility as an environmental control officer was to inspect the operations of the Grows landfill in Falls Township. That landfill was operated by a subsidiary of Waste Management Inc., a private company. Grows accepted waste disposal materials from a number of different private operators and municipalities operating in Bucks County and elsewhere. Each of the vehicles which arrived at the landfill to dump waste had to pay a fee to the township for the privilege of doing so, and as we found from the evidence, the township collected from the landfill operators approximately $742,000 in fees in 1985 and slightly less than $1.4 million in 1986.

The Second Class Township Code, act of 1933, May 1, P.L. 103, as amended by the act of May 9,

1961, P.L. 194 §1 (53 P.S. Supp. §65708) provides that the board of supervisors of the township is authorized:

"To regulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish and other refuse materials within the township. To prohibit accumulation of ashes, garbage, rubbish and other refuse materials upon private property, including the imposition and collection of reasonable fees and charges for the collection, removal, and disposal thereof."

They also have the power to:

"(1) Collect, remove and dispose of or *to provide by contract or otherwise for the* collection, removal and *disposal by* incineration, *landfill* or other methods *of ashes, garbage, rubbish and other refuse* materials and to prescribe penalties for the enforcement thereof. *Any such contract may be made for a period not exceeding three years."* (emphasis added).

In addition, section 802 of the Township Code, (53 P.S. Supp. §65802(e)(5)) authorizes the board of supervisors to enter into contracts involving "personal or professional services" without public bidding.

The Pennsylvania Solid Waste Management Act of July 7, 1980 P.L. 380, (35 P.S. §6018.101 et. seq.) provides that municipalities must provide for the storage, collection and disposal of municipal wastes in accordance with plans approved in accordance with regulations of the Department of Environmental Resources. However, the act also provides (35 P.S. §6018.202(c)) that municipalities *"may contract with any person* or other municipality to carry out their responsibilities for the . . . disposal of municipal wastes. . . ."

Reading all three of the above statute sections together, we hold that the Legislature has, in fact, specifically authorized the township to enter into contracts up to three years in length for the disposal of trash and wastes. We find that the power to supervise and monitor such private activity is necessarily related thereto.

We also believe the case law mandates that we hold that the present contract may not be abrogated by the incoming board of supervisors. In *Kosek v. Wilkes Barre Township School District*, 110 Pa. Super. 295, 298, 168 Atl. 518 (1933) (affirmed per curiam, 314 Pa. 18 (1934)), the court held that a doctor who entered into a contract with a third class school district to serve as a medical inspector for a designated term could not be removed at the pleasure of the school board during his term of office, and if so removed, he was entitled to his salary for the contract period. We believe that case is controlling here. Dr. Kosek's duties were quite similar in scope to plaintiff's. They were not only to give physical examinations to school students, but also:

"[T]o make a careful examination of all privies, waterclosets, urinals, cellars, the water supply and drinking vessels and utensils, and such additional examinations of the sanitary conditions of the school buildings as are deemed necessary, or as the regulations of the state Department of Health, or the rules of the board of school directors or of the local board of health require."

The *Kosek* court held that he could not be removed prior to the expiration of his term of employment and that he was not an "appointed public officer" removable at pleasure under Article VI, section 4 of the former Constitution of 1874 (now Article 6, section 7 of the present Constitution).

The township relies on cases such as *McCormick v. Hanover Township*, 246 Pa. 169, 92 Atl. 195 (1914) in which an employment contract with a township solicitor was held to be a contract involving a governmental function and therefore not binding upon a successor board. In the *McCormick* case, the court made a distinction recognized in many following cases between governmental and proprietary powers of municipalities. The court stated:

"With respect to the former, their exercise is so limited that no action taken by the governing body is binding upon its successor, whereas the latter are not subject to such limitation and may be exercised in a way that will be binding upon the municipality after the board exercising it shall have ceased to exist, as for example, in the case of contracts for the supply of water in boroughs and the making and repairing of roads in townships." 246 Pa. at 174.

Two later cases, both authored by Mr. Justice (later Chief Justice) Horace Stern, addressed the question of whether or not trash collection and disposal was a proprietary function. In *Manheim Township Supervisors v. Workman*, 350 Pa. 168, 173, 38 A.2d 273 (1944), the court stated:

"The furnishing of light by a municipality is a function performed by it in its proprietary or quasi-private capacity, just as when it furnishes gas or water or collects ashes, removes garbage or operates and maintains sewers."

In *Kunz v. Titusville*, 373 Pa. 528, 97 A.2d 42 (1953), an action involving a plaintiff's suit for personal injuries sustained by him at a *municipally owned* incinerator plant, the court held that under the then existing law, plaintiff could not recover against the city for the negligence of a municipal employee, because the city was exercising a governmental function.

We believe the proper standard to be applied is whether or not the activities of a particular employee require him to become involved in the exercise of governmental policy decisions by the elected board of supervisors. If they do, then it may be appropriate to decide that in the absence of a statute holding to the contrary[1] an outgoing board of supervisors should not tie the hands of its successors. On the other hand, if the activity involves, as here, non-policy ministerial or administrative decisions made by a technically trained person, we believe the contract should be enforced if the terms thereof are not otherwise against public policy.

Here, we note that the landfill operation was conducted by a private corporation on land owned by that corporation. The haulers who were bringing in the materials were both public and private. Also, plaintiff's functions in checking environmental quality were performed at the privately owned Grows laboratory facility. If any violations were discovered, plaintiff did not prosecute them himself, but referred them to the Bucks County Department of Health, the state Department of Environmental Resources or the Delaware River Basin Commission for enforcement. In addition, we note that substantial revenues are produced for the township by the private trash disposal facilities and that plaintiff's contract provided that his employment could be terminated by the township if the present landfill was discontinued.

Accordingly, we concluded that there was no reason why the three-year employment agreement entered into between the outgoing board of supervi-

---

1. See e.g., *Falls Township v. McManamon*, 50 Bucks Co. L. Rep. 226 (1986).

sors and plaintiff should not be enforced against the successor board. See also, *Sullivan v. Bucks County*, 92 Pa. Commw. 213, 223, 499 A.2d 678, 685 (1985) at footnote 8 affirming 46 Bucks Co. L. Rep. 98 (1985) holding that proprietary agreements may obligate successor governmental boards.

We entered our order for the foregoing reasons.