IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alice Mason                              :
                                         :
            v.                           :       No. 1242 C.D. 2019
                                         :       Argued:  June 9, 2020
Philadelphia Parking Authority,          :
                        Appellant        :


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                        FILED:  August 12, 2020


            The Philadelphia Parking Authority (PPA) appeals from an order of the
Philadelphia County Court of Common Pleas (Trial Court) overruling its preliminary
objections and allowing the contract-related claims filed by Alice Mason (Employee)
to proceed.  Employee challenges our jurisdiction, asserting the order appealed from
is not appealable under the collateral order doctrine.  PPA maintains the legal issues
must be resolved at this stage or its statutory exemption premised on the statute known
as the Parking Authorities Law, 53 Pa. C.S. §§5501-5517, 5701-5745 (Law), will be
effectively lost.  PPA contends its preliminary objections should have been sustained
because Section 5505(d)(8) of the Law, 53 Pa. C.S. §5505(d)(8), does not authorize
PPA to execute an employment contract so Employee's claims fail as a matter of law.
PPA also argues the Wage Payment and Collection Law (WPCL)[1] does not apply to it.
Because PPA's statutory arguments are inseparable from the merits, the order is not
collateral to the claims, and we lack jurisdiction.  Accordingly, the appeal is dismissed.

_____
    [1] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§260.1-.13, .45.

## I. Background

Employee worked for PPA's Taxi and Limousine Division (TLD) for 30 years. In January 2015, then Executive Director Vincent J. Fenerty, Jr. (Fenerty) memorialized a conversation with Employee concerning her continued employment in the TLD in a memorandum (Memorandum). *See* Compl., Ex. A; Reproduced Record (R.R.) at 103a. He advised her contribution to the TLD "has been outstanding [but] your pension requirements make your continued assignment there infeasible." *Id.* After noting her continued employment with PPA was not in jeopardy, Fenerty confirmed his interest to retain Employee in the TLD. To that end, he made the following offer:

> If you agree to enter the DROP [(Deferred Retirement Option Plans)][2] program, enabling [PPA] to eliminate the extraordinarily high pension payments, I will insure that you remain at the TLD for the remainder of your employment with the [PPA]. I am in no way insisting that you enroll in DROP at this time and if you elect not to do that I will offer you a position in another division. However, if you do wish to enter DROP, you will keep [your] current TLD position for the duration of your four[-][year] DROP period.

*Id.*

Employee entered the DROP program on March 18, 2015.[3] *See* Am. Compl. ¶8. Notwithstanding the language in the Memorandum that she was to keep her TLD position for the four-year DROP period, the PPA terminated her employment within two years, effective July 1, 2017. *Id.* ¶10.

---

[2] *See* the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§895.101-.1131.

[3] The Philadelphia Board of Pensions and Retirement DROP letter is dated March 18, 2015, but it states Employee's "DROP start date is <u>June 19, 2015</u>." Compl., Ex. B (emphasis in original).

Predicated on PPA's alleged breach of the Memorandum, Employee filed a complaint asserting federal civil rights claims, including discrimination, as well as contractual claims against PPA in the Trial Court. PPA then removed the case to federal court based on the civil rights claims. After Employee moved to dismiss the federal claims, the matter was remanded to the Trial Court.

Subsequently, Employee filed an amended complaint against PPA in the Trial Court asserting the following claims: breach of contract (Count I); promissory estoppel (Count II); unjust enrichment (Count III); and a claim seeking liquidated damages and attorney fees under the WPCL (Count IV). Employee's claims are based on her discharge from employment before the expiration of the four-year DROP period referenced in the Memorandum, which she characterizes as an employment contract.

PPA filed preliminary objections, including demurrers, asserting each claim depends on the existence of an employment contract and no such enforceable contract exists. PPA focused on its lack of statutory authorization to execute an employment contract under the Law, stating "that unless the legislature expressly and explicitly provides for tenure for public employment, any employment contract that abrogates the doctrine of at-will employment (such that plaintiff is attempting to assert herein) is void and unenforceable as an *ultra vires* action as a matter of law." Prelim. Objs. ¶17. In addition, the PPA challenged the application of the WPCL to governmental authorities generally as they do not fall within the statutory definition of "employer" in Section 2.1 of the WPCL, 43 P.S. §260.2a.[4] *Id.* ¶44.

---

[4] Added by the Act of July 14, 1977, P.L. 82.

3

Following briefing and argument, the Trial Court issued an order on July 9, 2019, overruling PPA's preliminary objections.[5] PPA filed a notice of appeal to this Court based on its status as a governmental body.

Pursuant to Pa.R.A.P. 1925(a), the Trial Court subsequently issued a perfunctory opinion determining that the appeal was improper under the collateral order rule set forth in Pa.R.A.P. 313. It concluded that orders overruling preliminary objections, and allowing a matter to proceed, are not appealable. *See* R.R. at 18a-19a.

This Court directed the parties to address the appealability of the order in their briefs.[6] After briefing and argument, the matter is ready for disposition.

## II. Discussion

PPA asserts our jurisdiction is proper because the protection afforded to parking authorities in Section 5505(d)(8) of the Law, 53 Pa. C.S. §5505(d)(8), would be effectively lost if the litigation was to proceed. Specifically, PPA relies on *Scott v. Philadelphia Parking Authority*, 166 A.2d 278 (Pa. 1960), holding parking authorities are constrained as employers "[t]o appoint officers, agents, employees and servants, to prescribe their duties and to fix their compensation." *Id.* at 282.

---

[5] The Trial Court's order used the term "denied" with respect to the preliminary objection; however, the proper vernacular in this disposition is to state the preliminary objections are overruled.

[6] PPA initially petitioned this Court for permission to appeal the Trial Court's order as an interlocutory order pursuant to the Official Note to Pa.R.A.P. 1311. *See Mason v. Phila. Parking Auth.* (Pa. Cmwlth., No. 1307 C.D. 2019, filed Sept. 19, 2019). However, this Court denied the application by order dated October 23, 2019, stating the "failure of the [T]rial [C]ourt to certify the interlocutory order for immediate appeal does not rise to the level of an egregious abuse of discretion." The day before, on October 22, 2019, this Court directed the parties to brief the appealability of the Trial Court's order in the instant appeal.

4

At the outset, this Court must assess whether appellate jurisdiction is proper. Generally, in determining appealability of orders, Pennsylvania courts adhere to the rule that an appeal will lie only from a final order, disposing of all parties or claims, unless otherwise permitted by statute or certified by a trial court or reviewing body. *Rae v. Pa. Funeral Dirs. Ass'n*, 977 A.2d 1121 (Pa. 2009); *see* Pa.R.A.P. 341(a). An order that qualifies as a collateral order under Pa.R.A.P. 313, while not a final order under Pa.R.A.P. 341, is "immediately appealable as of right." *In re Sheriff's Excess Proceeds Litig.*, 98 A.3d 706, 718 (Pa. Cmwlth. 2014).

## A. Collateral Order Doctrine

Whether an order is appealable as a collateral order is a question of law; as such, our standard of review is *de novo* and our scope of review is plenary. *Id.* However, if a question of fact is presented, appellate jurisdiction does not exist. *Yorty v. PJM Interconnection, L.L.C.*, 79 A.3d 655 (Pa. Super. 2013). Rule 313 provides:

> **(a) General Rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. Thus, for jurisdictional purposes, the order must meet three criteria: (1) *separability* from the merits; (2) *public importance* of the right under review; and (3) *irreparable loss* if review is delayed. *MarkWest Liberty Midstream & Res., LLC v. Clean Air Council*, 71 A.3d 337 (Pa. Cmwlth. 2013) (*en banc*). "Each prong of the collateral order doctrine must be met" for an order to qualify for review. *Id.* at 342.

As to separability, this Court explained:

a claim is sufficiently separate from the underlying issues . . . if it is conceptually distinct from the merits of the plaintiff[']s claim, that is, where even if practically intertwined with the merits, [the order] nonetheless raises a question that is significantly different from the questions underlying plaintiff's claim on the merits.

*Township of Worchester v. Office of Open Records*, 129 A.3d 44, 55 (Pa. Cmwlth. 2016) (quoting *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 433 (Pa. 2006)). The legal issues in the order must be distinct from the underlying claims. We follow a practical approach, "recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable." *Id.*

As to public importance, "it is not sufficient that the issue under review is important to a particular party; it 'must involve rights deeply rooted in public policy going beyond the particular litigation at hand.'" *Id.* "[B]efore concluding an issue . . . implicates a right too important to be denied review[,] we consider whether the right is important compared to the costs of piecemeal litigation and the efficiency interests sought to be advanced by adherence to the final judgment rule." *Rae*, 977 A.2d at 1129.

As to irreparable loss, we examine "whether a right is 'adequately vindicable' or 'effectively reviewable'" absent our review. *Twp. of Worchester*, 129 A.3d at 55 (citation omitted). This question "cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement." *Id.* While generally construed as a loss of a claim or defense, or a metaphorical bell that cannot be unrung (*e.g.*, a discovery order

6

compelling production), irreparable loss may also be the loss of time, resources and effort to litigate a matter that is statutorily exempt from litigation. *See Pridgen.*

## B. Applying the Collateral Order Rule

Appellate courts are directed to apply the rule's three-pronged test "independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Rae*, 977 A.2d at 1130. As a result, even if the rule "is satisfied with respect to one issue" or claim, that does not mean that we have "jurisdiction to consider every issue within the ambit of the appealed order." *Id.* at 1123. Moreover, the collateral order doctrine is to be construed narrowly. *Id.*

Mindful of these considerations, we apply the rule to the Trial Court's order that rejected PPA's statutory exclusion arguments, overruled the demurrers, and permitted Employee's claims to proceed through the pleadings stage.

### 1. Contractual Claims

At their core, Employee's claims are premised on the Memorandum constituting an employment agreement for a four-year period, and the termination of her employment before the end of that term. She asserts a breach of contract claim (Count I) and two quasi-contract claims, promissory estoppel (Count II) and unjust enrichment (Count III) predicated on the Memorandum constituting a promise of continued employment, in exchange for which she altered certain pension benefits. Additionally, because the WPCL provides a mechanism to enforce an already existing right to compensation from an employer, the viability of Employee's WPCL claim (Count IV) also depends upon an enforceable contract right.

7

Premised on its status as a local authority,[7] PPA contends that because the power to execute an employment contract is not statutorily conferred, there is no basis for a breach of contract claim or claims implying a contract to prevent injustice (*i.e.*, promissory estoppel and unjust enrichment). PPA also maintains it is exempt from the WPCL because the definition of "employer" does not include municipal authorities. *See* Section 2.1 of the WPCL, 43 P.S. §260.2a.

PPA argues it lacks the statutory authorization to enter employment contracts that abrogate the at-will employment doctrine. In support, it cites *Scott v. Philadelphia Parking Authority*, and more recent decisions applying its rationale. *See Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333 (Pa. 1995) (construing identical language in Section 5607(d)(8) of the Municipality Authorities Act, 53 Pa. C.S. §5607(d)(8)); *see also Knox v. Bd. of Sch. Dirs.*, 888 A.2d 640 (Pa. 2005). Thus, regardless of whether the Memorandum constitutes a contract, PPA contends it is unenforceable because it was *ultra vires*.

To qualify as collateral, an order must not be of such interlocutory nature as to affect, or be affected by, the merits of the main cause of action. *Chase Manhattan Mortg. Corp. v. Hodes*, 784 A.2d 144 (Pa. Super. 2001). Generally, "an order overruling preliminary objections and directing the filing of an answer is interlocutory and unappealable." *Id.* at 145. The Trial Court's order overruling PPA's demurrers is likewise not a collateral order.

---

[7] Our Supreme Court has held that PPA is a Commonwealth agency in matters involving its regulatory authority, over which this Court exercises original jurisdiction. *See Blount v. Phila. Parking Auth.*, 965 A.2d 226 (Pa. 2009).

8

Assessing an order overruling a demurrer entails review of whether the pleadings set forth the prerequisites for a cause of action. A breach of contract claim requires: (1) existence of a contract; (2) breach of a contractual duty; and (3) damages resulting from the breach. *See Allegheny Intermed. Unit v. E. Allegheny Sch. Dist.*, 203 A.3d 371 (Pa. Cmwlth. 2019). Also, "to rebut the presumption of at-will employment, [an] [employee] must establish the existence of additional consideration" beyond services performed, an agreement for a definite term or allowing discharge only for just cause. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 942 (Pa. Super. 2011).

Here, PPA's statutory authority argument challenges the existence of a contract, which is a prerequisite to establishing a breach of contract claim. PPA emphasizes it lacks authority to execute an employment contract pursuant to its limited statutory powers as construed in *Scott*. The power the legislature granted to PPA under its original enabling legislation[8] was "to appoint officers, employees and agents and to fix their compensation." 166 A.2d at 282. In *Scott*, our Supreme Court construed this language as precluding PPA from executing an employment contract. *Scott*. That language is identical to the current language that limits PPA's authority in the employment context to that stated in Section 5505(d)(8) of the Law.[9]

---

[8] *See* Act of June 5, 1947, P.L. 458, *as amended*, *formerly* 53 P.S. §§341-356, repealed by the Act of June 19, 2001, P.L. 287. Until recodification of the statute in 2001, parking authorities throughout the Commonwealth had similar organizational structures, powers, and duties. At that time, the General Assembly significantly amended the law, establishing different powers and organizational standards for PPA, whereas other municipal parking authorities retained the same administrative structures and powers.

[9] The language in the predecessor act regarding *appointment of employees* is substantially similar to the current language such that the prior construction of the same language by the Supreme Court 60 years ago in *Scott* stands. 1 Pa. C.S. §1922(4) ("when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language").

9

Regardless of the legal merit in PPA's statutory argument,[10] its authority to contract is not separable from Employee's contract claim. Indeed, our review of this issue implicates the existence of a contract, which goes to the merits. As a result, the Trial Court's order overruling the preliminary objections to the breach of contract claim does not meet the collateral order test.

Likewise, the demurrers to the implied contract claims (promissory estoppel and unjust enrichment)[11] are inextricably intertwined with the merits such that the Trial Court's order is inseparable from them. "A demurrer will not be sustained unless the face of the complaint shows that the law will not permit recovery and any doubts should be resolved against sustaining the demurrer." *Travers v. Cameron Cty. Sch. Dist.*, 544 A.2d 547, 549 (Pa. Cmwlth. 1988). Thus, we cannot

---

[10] We observe *Scott v. Philadelphia Parking Authority*, 166 A.2d 278 (Pa. 1960), retains vitality for the proposition that agreements with public employees are beyond a municipal authority's power and void *ab initio*. *See Terrick v. Munhall Sanitary Sewer Mun. Auth.* (Pa. Cmwlth., Nos. 151 C.D. 2018, 526 C.D. 2018, filed Dec. 18, 2018), 2018 WL 6613749 (unreported) (construing identical language in Section 5607(d)(8) of the Municipality Authorities Act, 53 Pa. C.S. §5607(d)(8)); *see also Bolduc v. Bd. of Sup'vrs of L. Paxton Twp.,* 618 A.2d 1188 (Pa. Cmwlth. 1992) (employment contract void as township lacked authority to abrogate at-will employment of public employees).

Although we do not reach the merits, to the extent the breach of contract is predicated on a guarantee of employment for the four-year DROP period, it bears emphasis that Section 1104 of the Municipal Pension Plan Funding Standard and Recovery Act explicitly states: "Participation in a DROP does not guarantee the DROP participant's employment by the local government during the specified period of the DROP." Section 1104 of the Act, added by the Act of September 18, 2009, P.L. 396, 53 P.S. §895.1104. Based on this provision, this Court greets with skepticism the merits of Employee's breach of contract claim.

[11] To state a claim for promissory estoppel, there must be a promise by one party to another, and detrimental reliance by the other party on that promise. *See* RESTATEMENT (SECOND) CONTRACTS §90 (Am. Law Inst. 1979); *Travers v. Cameron Cty. Sch. Dist.*, 544 A.2d 547, 550 (Pa. Cmwlth. 1988) (promissory estoppel is "a vehicle by which a promise may be enforced in order to remedy an injustice"). To state an unjust enrichment claim, there must be: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Cmwlth. 2006) (citation omitted).

discern a difference between the merits of these claims and an order recognizing their legal merit. Accordingly, the Trial Court's order denying PPA's demurrer as to the equitable claims is not collateral to, *i.e.*, inseparable from, a decision on the merits.

Because a party must satisfy all three prongs of the collateral order doctrine, *see Rae*, and, here, the separability prong is not met, we lack jurisdiction to review the Trial Court's order as to the contract claims. Nonetheless, in the interest of completeness, we briefly address the other prongs.

As to public importance, the statutorily constrained powers of PPA have wide ramifications beyond the parties before us. There is a need to uphold parameters of statutory authority and to protect public employers from employment litigation that compromises the public fisc. *See* Section 5502 of the Law, 53 Pa. C.S. §5502 ("Such purposes [of parking authorities] are declared to be public uses for which public money may be spent . . . ."). This Court also recognizes pension rights are significant sources of financial remuneration and the enforceability of those rights, whether at law or equity, are important to public employees. *See generally Wiggins v. Phila. Bd. of Pensions & Retirement*, 114 A.3d 66 (Pa. Cmwlth. 2015) (*en banc*). Thus, PPA's statutory authority argument meets the public importance prong.

As to the third prong, the lack of statutory authority defense PPA asserts here is not irreparably lost if not reviewed at this early stage. Although subjecting PPA to litigation costs when there is a statutory basis for saving it from that expense may constitute an irreparable loss, *see Pridgen*, PPA may raise these statutory defenses in the pleadings and in subsequent dispositive motions.

11

Because the Trial Court's order overruling the preliminary objections to the contractual claims in Counts I, II and III of the Amended Complaint does not qualify as a collateral order, we lack jurisdiction over those claims.

## 2. WPCL

Next, we assess the appealability of the order as to the WPCL claim. Here, PPA contests the application of the WPCL, arguing it is excluded from the statutory definition of "employer." It also challenges the existence of a contract.

To state a WPCL claim, an employee must aver a contractual entitlement to compensation and an <u>employer's</u> failure to pay that compensation. *See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. 2005). Importantly, the WPCL only "establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled <u>by the terms of an agreement</u>." *Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. 2000) (emphasis added).

Section 2.1 of the WPCL, defines "employer" as "every person, firm, partnership, association, <u>corporation</u>, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a (emphasis added). PPA emphasizes this Court's exclusion of municipal corporations like authorities from that definition. *See Huffman v. Borough of Millvale*, 591 A.2d 1137, 1139 (Pa. Cmwlth. 1991) (upholding order sustaining demurrer to WPCL claim because "[m]unicipal corporations . . . are not included within the definition of 'employer'").

12

PPA's proffered exclusion from claims under the WPCL is inextricably intertwined with the merits of Employee's WPCL claim. This Court cannot assess the application of the WPCL without assessing the merits of that claim. As such, the Trial Court's order as to the WPCL claim in Count IV of the Amended Complaint does not qualify as a collateral order within our jurisdiction.

### III. Conclusion

Because PPA did not establish that the Trial Court's order qualified as a collateral order with regard to each of Employee's claims, we lack jurisdiction to address the matter. Accordingly, PPA's appeal is dismissed.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alice Mason | : | |
| | : | |
| v. | : | No. 1242 C.D. 2019 |
| | : | |
| Philadelphia Parking Authority, | : | |
| Appellant | : | |

# **O R D E R**

**AND NOW**, this 12th day of August 2020, because the order entered by the Philadelphia County Court of Common Pleas, disposing of the Philadelphia Parking Authority's preliminary objections, is not collateral to the claims under Pa.R.A.P. 313(b), we lack jurisdiction over the matter.  Therefore, the appeal is DISMISSED.


_____
J. ANDREW CROMPTON, Judge