Beloff *v.* Margiotti, et al., Appellants.

Argued November 22, 1937. Before Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*John Y. Scott,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellants.

*Otto Kraus, Jr., Robert T. Fox* and *Benjamin M. Golder,* for appellee, were not heard.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1938:

On December 27, 1934, William A. Schnader, then Attorney General, retained plaintiff as one of the lawyers to represent the Commonwealth in its escheat claim against the Estate of Henrietta E. Garrett, whose inventoried assets aggregated more than sixteen million dollars. The Attorney General's action was approved by the Governor.

In his letter to plaintiff evidencing the employment, Mr. Schnader stated that his compensation would be as follows: "A minimum of $5,000 regardless of the outcome of the litigation. If the Commonwealth's position is sustained and the residue of the estate is paid into the State Treasury, you will receive a fee of $25,000 less any payment previously made to you under this agreement. During the course of the litigation you are to be paid at the rate of $500 per month subject, however, to the foregoing provision that your minimum compensation shall be $5,000."

Plaintiff immediately entered upon his duties and continued to render services until he was dismissed by Attorney General Margiotti on February 13, 1935. Mr. Schnader's occupancy of the office of Attorney General ceased on January 15, 1935, the date of the expiration of the term of the Governor, and Mr. Margiotti succeeded him in the office on that day.

In this mandamus proceeding plaintiff seeks to compel the payment to him of the minimum sum agreed to, $5,000. The position of the Commonwealth is that he is only entitled to be paid for the services actually rendered on a quantum meruit basis. The court below determined in plaintiff's favor and directed the writ of mandamus to issue as prayed for and from this action the State officials against whom it is directed appeal.

The argument by the Attorney General is based upon the proposition that the making of the agreement with plaintiff to pay him a minimum fee of $5,000 was invalid; that the former Attorney General and the Governor were without power or authority to make it because it was contrary to sound public policy and actually constituted an attempt on the part of his predecessor and the preceding Governor to limit and curtail his proper and lawful activities in the employment of attorneys to assist him in handling the legal affairs of the Commonwealth. It is asserted that a public officer with a known and limited term has no power to make a contract necessarily extending beyond the expiration of his term, and where the contract is for the furnishing of services so peculiarly personal as legal services the rule applies with particular force.

This argument disregards the status of the Attorney General in our scheme of government, his great powers and responsibilities and the danger to the State if his hands should be tied when, in good faith, which is not here challenged, he deems it necessary to employ attorneys to act for the Commonwealth, and champion its interests. Next to the Governor the Attorney General is the most important officer in the executive branch of the State Government. Quite recently in *Commonwealth ex rel v. Margiotti*, 325 Pa. 17, 188 A. 524, we took occasion to point out some of his extensive powers. To say to the incumbent of that high office in such a great State as this that when he in good faith considers it necessary he may not retain a lawyer at any time and undertake to pay him a proper minimum fee for the service to be rendered would hamper the Attorney General in a way he ought not to be bound down. There are many occasions when it is essential to the protection of the Commonwealth's interests that the Attorney General should act promptly in retaining lawyers outside of his department. It is necessary that he should be able to do this and to fix their compensation, otherwise

he might be sorely handicapped in obtaining the men whom he deems proper to represent the Commonwealth. The principle to which our attention is called by appellants, applying to subordinate municipal officers, that they may not enter into contracts for legal service to be performed entirely during the term of their successors *(McCormick v. Hanover Twp.,* 246 Pa. 169, 92 A. 195) may not so employ an engineer *(Moore v. Luzerne County,* 262 Pa. 216, 105 A. 94) has no bearing so far as the Attorney General is concerned. There are sound reasons why these subordinate officials should be restricted as they are, but the reasons are all the other way so far as the head of the Department of Justice of the State is concerned.

In addition to the general powers which attach to him in virtue of his office to do what was here done, the Attorney General with the Governor's approval has the specific power to do so by the Act of April 9, 1929, P. L. 177, Art. IX, sec. 906, 71 PS sec. 296, which provides: "In addition to such deputy attorneys general as may be appointed to assist in the conduct of the regular work of the department the Attorney General, with the approval of the Governor, shall have power . . . (b) From time to time to appoint and fix the compensation of special deputy attorneys general, and special attorneys, to represent the Commonwealth, or any department, board, or commission thereof, in special work or in particular cases."

No limitation is put on the power of the Attorney General as to time. He is expressly authorized to fix the compensation. The authority is given with respect to special work or particular cases, which might arise at any time. The only limit on his discretion is the approval of the Governor. There is, therefore, an unlimited power lodged by the legislature in the two highest officers of the State so long as they act in good faith.

Mr. Schnader found himself confronted, toward the close of his term of office, with a situation in which it

was possible that the Commonwealth might acquire many millions of dollars in an escheat proceeding in the Garrett Estate. An informer had notified the Commonwealth of its right to escheat. An audit in the estate was fixed for January 7, 1935. Mr. Schnader was bound to see that the Commonwealth was adequately represented at that audit, and accordingly on December 27, 1934, he employed the plaintiff together with two other attorneys to investigate, study, make preparations for and represent the Commonwealth at this audit and in subsequent proceedings. It is not alleged that the employment of three attorneys was improper, because Mr. Margiotti has with equal propriety employed three others. The attorneys retained were to give substantially all of their time to this special business until it was completed. To say that the Attorney General may not agree to a minimum compensation for lawyers whom he employs would be to fly in the face of the statute.

We think the court below properly directed the mandamus to issue.

Judgment affirmed.