## Scott *v.* Philadelphia Parking Authority, Appellant.

Argued January 7, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused January 5, 1961.

*Hirsh W. Stalberg,* with him *Harry Shapiro,* and *Shapiro, Rosenfeld, Stalberg & Cook,* for appellant.

*Henry J. Morgan,* with him *Edwin P. Rome,* and *Blank, Rudenko, Klaus & Rome,* for appellee.

152

OPINION BY MR. JUSTICE COHEN, December 1, 1960:

Howard Scott, appellee, now deceased, brought this action in assumpsit to recover monies allegedly due under an employment contract between appellee and the Philadelphia Parking Authority, appellant, increasing appellee's annual salary as managing director of the Authority to $15,000. The Authority answered, denying the validity of the contract and contending that because it was entered into by prior members of the Authority for a proposed term to extend beyond the appointed terms of each of the prior members, it could not bind the succeeding members of the Authority. In addition, the Authority filed a counterclaim for those monies paid to appellee at the rate of $15,000 a year which exceeded the $10,000 rate for which the appellee had previously contracted. The court below, finding the agreement to be fair, just and reasonable, prompted by the necessities of the situation and advantages to the public at the time it was entered into, entered judgment for the appellee. This appeal followed.

The Philadelphia Parking Authority is a public corporate body created by the Philadelphia City Council under the authority of the Act of June 5, 1947, P. L. 458, as amended, 53 PS §341 et seq. Its primary purpose is to promote the public safety, convenience and welfare by providing off-street parking facilities so as to alleviate parking and traffic problems. The Authority has five members appointed by the Mayor of the City of Philadelphia to serve without compensation for staggered five year terms so that the term of one member will expire each year. Under its enabling legislation, Act of June 5, 1947, supra, the Authority is granted "all powers necessary or convenient for the carrying out of the aforesaid purposes" including the power ". . . (7) To appoint officers, agents, employees and servants; to prescribe their duties and to fix their compensation;" and the power ". . . (10)

To make contracts of every name and nature, and to execute all instruments necessary or convenient for the carrying on of its business." §5, 53 PS §345.

Appellee was the first managing director of the Philadelphia Parking Authority. His employment commenced sometime in 1950 at a starting salary of $300 a month. As of September, 1953, however, appellee was under written contract with the Authority, dated April 23, 1952, providing for a three year term of employment as managing director at a salary of $10,000 a year. On September 23, 1953, having determined that the $10,000 annual salary was not commensurate with the responsibility the appellee had been obliged to assume, the then members of the Authority unanimously resolved to offer appellee a new contract of employment for a term of three years at an annual salary of $15,000, to be effective September 1, 1953.

The offer was accepted by the appellee. The three year term included therein clearly extended beyond the appointed term of office of every member then on the Authority.[1]

Shortly thereafter, the members of the Authority who authorized the new agreement were replaced by new members. Nevertheless, payments at the rate of $15,000 a year were made to appellee until January 27, 1954, after which date the new members of the Authority, questioning the validity of the agreement in issue, reduced the appellee to the basis of his $10,-000 salary without prejudice to his claim to be paid at the rate of $15,000. Appellee remained as managing director until November 30, 1956, at which time he was discharged. He then instituted suit, claiming damages for some $13,125 which represents, with ap-

---

[1] The terms of several members of the Authority had expired, but they retained their offices pending the appointment of successors.

propriate adjustments, the difference between the two salaries. The Authority's counterclaim was based on the asserted overpayments between September 1, 1953 and January 27, 1954 (i.e., payments at the $15,000 instead of the $10,000 annual rate).

We are asked to determine the validity of a contract which gives an appointed employee of a public authority a tenure for a period of three years at a fixed salary. The primary issue as we see it is not, as the parties have argued, whether the instant contract is unenforceable as an attempt to bind the succeeding members of the Authority, but whether the making of the contract in the first place was beyond the power of the Authority and hence initially invalid.

Without more, an appointed public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will. As we said in *Mitchell v. Chester Housing Authority*, 389 Pa. 314, 328, 132 A. 2d 873 (1957), with reference to a state agency employee but applicable in general, ". . . good administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large." The power to dismiss summarily is the assurance of such responsibility.

Tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace. It represents a policy determination that regardless of personality or political preference or similar intangibles, a particular job, to be efficiently fulfilled, requires constant and continuous service de-

spite changes in political administration. In general, the legislature has conferred tenure as an integral part of a comprehensive governmental employment scheme such as those embodied in the Civil Service Act[2] or the Teacher Tenure Acts.[3] These legislative directives, and regulations promulgated thereunder, set forth in great detail the minimal requirements an employee must meet in order to secure initially governmental employment, the standards for advancement of such an employee, job classifications for remunerative purposes, and the requisites for discharge. Importantly, it is not until an employee has qualified under the systems that he is entitled to his tenure rights. See *Templeton Appeal*, 399 Pa. 10, 159 A. 2d 725 (1960).

Furthermore, where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating. Professional employees in our public school system, as the term is defined in the Public School Code,[4] are expressly covered. The Civil Service Act itself expressly denominates certain state departments, boards and commissions to which its terms apply,[5] and under Section 212

---

[2] Act of August 5, 1941, P. L. 752, as amended, 71 PS §741.1 et seq.

[3] Act of March 10, 1949, P. L. 30, Art. XI, as amended, 24 PS §11-1121 et seq.

[4] "The term 'professional employe' shall include teachers, supervisors, supervising principals, principals, directors of vocational education, dental hygienists, visiting teachers, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists, school nurses who are certified as teachers and any regular full-time employe of a school district who is duly certified as a teacher." Id. at §1101, 24 PS §11-1101.

[5] ". . . all offices and positions now existing or hereafter created in the Department of Public Assistance, State Board of Public Assistance and county boards of assistance, all offices and positions now existing or hereafter created in the Department of Labor and Industry charged with the administration of the Unemploy-

of the Act sets forth the machinery whereby ". . . other State Departments, boards, commissions or agencies and political subdivisions of this Commonwealth . . . ." may obtain the services and facilities of the Civil Service Commission and its staff.[6] State employees administering the Unemployment Compensation Act and the Liquor Code are specifically subjected to civil service coverage and protection by the very terms of the statutes.[7] See also the system statutorily outlined for employing personnel for the Pennsylvania Board of Parole[8] and the advisory health board under the State Department of Health.[9]

Where, then, is the legislative expression that the Authority has the power to create tenure by contract?

―――

ment Compensation Law, all offices and positions now existing or hereafter created under the Pennsylvania Liquor Control Board, all offices and positions under the State Civil Service Commission and the Personnel Director, and any other offices and positions of any department or agency to which this act may hereafter be extended." Act of August 5, 1941, P. L. 752, §3(c), as amended, 71 PS §741.3.

[6] Id. at §212, 71 PS §741.212. Pursuant to the authority of this section there is currently civil service coverage in the following state departments and offices: Board of Vocational Education and Rehabilitation; Department of Health; Lower Bucks County Joint Municipal Authority; Office for the Blind (Department of Public Welfare); Office for Children and Youth (Department of Public Welfare); Office of Mental Health (Department of Public Welfare); Office of Special and General Hospitals (Department of Public Welfare); State Council of Civil Defense.

[7] Unemployment Compensation Act, Act of December 5, 1936, Second Ex. Sess. P. L. (1937) 2897, §§202, 203, 208.1, as amended, 43 PS §§762, 763(e), 768.1; Liquor Code, Act of April 12, 1951, P. L. 90, art. II, §207(f), art. III, §302, §§207(f), 302, 47 PS §§2-207(f), 3-302.

[8] Act of August 6, 1941, P. L. 861, §§12-15, as amended, 61 PS §§331.12-331.15.

[9] Act of April 9, 1929, P. L. 177, art. XXI, §2111, as amended by the Act of August 24, 1951, P. L. 1340, §3, 71 PS §541.

The power granted to the Authority under its enabling legislation is to *appoint* officers, employees and agents and to fix their compensation, *not* to enter into contracts of employment. Clearly, absent the contract, the Authority would have had the power to discharge the appellee summarily. If the Authority has the power to contract away this right which under sound principles of law and public policy is fundamental to a scheme of good government, it must be set forth expressly in the enabling legislation. A studied examination of the Act of June 5, 1947, discloses that not to be the case here.

A power to confer tenure by contract most assuredly does not derive from the general grant of powers necessary and convenient to carry out the purposes of the Authority, nor from the general power to make contracts of every name and nature. Each of these grants of broad power relates to those other powers necessary to carry on the business and proprietary functions of the Authority and cannot be read to include the power to contract away the right of summary dismissal. Similarly, we are not here concerned with contracts for work on particular and specific projects being carried out by a governmental body which might necessitate the temporary services of some specialist. See *Beloff v. Margiotti,* 328 Pa. 432, 197 Atl. 223 (1938) ; *Light v. Lebanon County,* 292 Pa. 494, 141 Atl. 291 (1928) ; *Moore v. Luzerne County,* 262 Pa. 216, 105 Atl. 94 (1918) ; *McCormick v. Hanover Township,* 246 Pa. 169, 92 Atl. 195 (1914). The contract here called for the employment on an annual basis of a close and confidential employee of a public body responsible for its daily management and supervision. As such, it directly concerned the organizational scheme of the Authority and had to accord with the legislative mandate. The enabling act calls for *appointed* officers, agents and employees necessarily responsible to the members of

the Authority, themselves appointees, all of whom are subject to summary dismissal.[10] Since no legislative authority exists which permits a contract of this nature, the instant contract is invalid and unenforceable in its entirety.

Both parties have cited our decision in *Mitchell v. Chester Housing Authority*, supra, as favoring their position; but our holding therein was predicated on different grounds than those we now enunciate. *Mitchell* involved a suit in assumpsit for breach of an employment contract brought by the former secretary-executive director of the Chester Housing Authority. The executive director had served in that capacity with the Housing Authority on a month-to-month basis for 15 years. Several days after the election of a new governor, the members of the Authority, anticipating their dismissal, entered into a written contract with the executive director engaging him in that capacity for a term of five years at an annual salary of $10,000. Shortly thereafter, a new Board was appointed which repudiated the five year contract and discharged the plaintiff. Viewing the contract in question as a governmental function of the Chester Housing Authority, we declared the contract unenforcebale under the general rule that ". . . In the performance of sovereign or governmental, as distinguished from business or proprietary, functions, no legislative body, or municipal board having legislative authority, can take action which will bind its successors: McCormick v. Hanover Township, 246 Pa. 169, 92 A. 195; Moore v. Luzerne County, 262 Pa. 216, 105 A. 94; Born v. Pittsburgh, 266 Pa. 128, 109 A. 614. It cannot enter into a contract which will extend beyond the term for which the members of the body were elected." Id. at 321. Be-

---

[10] By virtue of the express provisions of Section 8 of the Act of 1947, P. L. 458, as amended, 53 PS §348(c).

cause the result in *Mitchell* would have been the same on any one of several grounds, we found it unnecessary to discuss the initial validity of the contract.

Our decision in *Horvat v. Jenkins Township School District*, 337 Pa. 193, 10 A. 2d 390 (1940), cited by appellee, similarly involved the question whether a contract was invalid because it bound a succeeding board. There, however, the School Code expressly gave the school board the power to "employ, for a term not exceeding three years, a supervising principal," Act of May 18, 1911, P. L. 309, §1214; and we expressly recognized that the initial power to contract for employment existed by legislative grant.

In sum, the act of the prior members of the Authority in entering into an employment contract with the appellee was beyond their power. The contract was therefore invalid, and appellee may not maintain this claim in assumpsit. The judgment for appellee must be reversed, but because of appellant's counterclaim the case must be remanded. Since the merits of the counterclaim were not briefed or argued either before us or the court below, we will not rule upon the question at this time.

Judgment reversed and the case remanded for further proceedings consonant with this opinion.

---

Dissenting Opinion by Mr. Justice Bell:

On April 23, 1952 the Philadelphia Parking Authority entered into a written contract with Scott to employ him as its managing director for a term of three years at a salary of $10,000 a year. As the majority opinion states "On September 23, 1953, having determined that the $10,000 annual salary was not commensurate with the responsibility the appellee had been obliged to assume, the then members of the Authority unanimously resolved to offer appellee a new

contract of employment for a term of three years at an annual salary of $15,000, to be effective September 1, 1953. The offer was accepted by the appellee [Scott]. The three year term included therein extended beyond the appointed term of office of every member then on the Authority. . . ." The Court below, finding the agreement "to be fair, just and reasonable, prompted by the necessities of the situation [and] advantageous to the municipality at the time it was entered into," entered judgment for Scott. We note parenthetically that these findings are unchallenged and have been accepted by the parties and by this Court.

While Scott's three year contract extended beyond the appointed term of the then members of the Authority, the new members of the Authority continued to employ Scott (by unanimous vote) as managing director of the Authority at a salary of $10,000 a year, without prejudice to his right to sue for the difference in salary. As Judge CHUDOFF, in a very able opinion in which, inter alia, he correctly distinguished *Mitchell v. Chester Housing Authority*, 389 Pa. 314, 132 A. 2d 873, pertinently said: ". . . this is not a case of an attempt [as it was in the *Mitchell* case] by the Board in September of 1953 to enter into a contract which would limit the discretion or hamstring the policies of future boards. . . . *The members of the successor board\* found Scott wholly acceptable to them and retained his services for more than three years following their entry into office . . . and paid him* a salary of $10,000 a year for his services as managing director."

There is not the slightest doubt that in the business world and in equity and good morals Scott was entitled to his annual salary of $15,000 in accordance with his contract with the Authority—does the law governing this Authority prohibit this contract?

---

\* Italics throughout, ours.

The majority has reversed the judgment of the lower Court and has held the written contract of the Authority to be invalid solely because the Authority lacked the power to employ Scott for a fixed term*— it could employ him *only at will*. With this conclusion and with the reasoning and the basic philosophy of the majority's opinion I am in complete disagreement.

The Act of June 5, 1947, as amended May 9, 1949, P. L. 969, known as the Parking Authority Law, grants to the Authority, inter alia, the power and authority "Section 5. Purposes and Powers; General. . . . (b) (7) To appoint officers, agents, *employees* and servants; to prescribe their duties *and to fix their compensation;*" and the power and authority "(10) *To make contracts of every name and nature,* and to execute all instruments necessary or convenient for the carrying on of its business." There are no standards or qualifications for employees, and there are no other standards or requisites for contracts.

It is difficult to imagine language which could more clearly authorize, encompass and include this contract unless the right to employ by contract a managing director for a fixed period of years was expressly and specifically granted in the Act—something which occurs perhaps once or twice in a thousand times. Scott was an employee of the Authority, and the Authority is expressly empowered to appoint employees and officers and to fix their compensation. Moreover, we repeat, the Authority is authorized and empowered by the legislature in the broadest *all-inclusive* language "to make contracts of every name and nature . . . nec-

---

* The majority opinion held that the issue did not turn on whether the contract was invalid because it extended beyond the term of a majority or all of the members of the Authority, and hence did not discuss this phase of the case. Scott was an employee and not an appointed officer, within the meaning of Article VI, §4 of the Constitution.

essary or convenient for the carrying on of its business." There is no provision or language in the Act which qualifies or limits these broad and pertinent powers!

It is crystal clear, at least to me, (1) that the legislature expressly and without any doubt authorized the Authority to make this contract with Scott, and (2) that the contract as the Courts found (a) was fair and reasonable, (b) was advantageous to the public, and (c) was required by the necessities of the situation. These are the important and vital factors which distinguish this case from the cases cited in the majority opinion.

Where, as here, the Statute authorizes such a contract, or even where the Statute is silent on the subject, if the contract is made in good faith, is fair, reasonable, and is advantageous to the employer at the time it was made, it will be sustained even though it extends beyond the term of the appointing Board:* *Horvat v. Jenkins Township School District,* 337 Pa. 193, 10 A. 2d 390 (1940); *Beloff v. Margiotti,* 328 Pa. 432, 197 A. 223 (1938); *Light v. Lebanon County,* 292 Pa. 494, 141 A. 291 (1928). See to the same effect *Denio v. Huntington Beach,* 22 Cal. 2d 580, 140 P. 2d 392;** *Madison County Fiscal Ct. v. Cotton,* 273 Ky.

---

* If the contract was made for political reasons, or not in good faith, it will not be sustained: *Mitchell v. Chester Housing Authority,* 389 Pa. 314, 328, 132 A. 2d 873 (1957); *Moore v. Luzerne County,* 262 Pa. 216, 105 A. 94 (1918); *McCormick v. Hanover Township,* 246 Pa. 169, 92 A. 195 (1914).

** Wherein Mr. Justice SCHAUER, speaking for the Court said: "It is our opinion, however, that the law is settled in California that a contract made by the council or other governing body of a municipality, which contract appears to have been fair, just and reasonable at the time of its execution, and prompted by the necessities of the situation or in its nature advantageous to the municipality at the time it was entered into, is neither void nor voidable merely because some of its executory features may extend

508, 117 S.W. 2d 201; *Aslin v. Stoddard County*, 341 Mo. 138, 106 S.W. 2d 472; *J. N. McCammon, Inc. v. Stephens County*, 127 Tex. 49, 89 S.W. 2d 984.

This opinion could end here were it not for the reasoning and the basic philosophy expressed in the majority opinion. The majority opinion attempts to justify its decision by declaring (1) that this contract is a case of "tenure in public employment" equivalent to the tenure in the Civil Service Acts and the Teacher Tenure Acts, and (2) that it is for the public good that the highest employees and officers of an important public body can be employed *only at will* and must be subject to summary dismissal at any time a politician desires. This may be good politics, but it certainly makes for less efficient government and it certainly is not in the public interest! After the majority's decision and philosophy become known, why would any man of ability and experience accept, or leave a good job to accept an important job or enter into a contract with a State or municipal or other governmental Authority in Pennsylvania (or similar body of which there are hundreds) for a fixed term of two or three or more years when the agreement is meaningless, and in spite of its clear covenants he can be dismissed at will? Isn't it clear that the decision and the philosophy expressed in the majority opinion will preclude this and hundreds of similar public bodies from obtaining highly qualified personnel for important positions, and, by eliminating job security and even short term contracts, will not only stultify the purposes and objectives of these public bodies, but will grievously prejudice their successful operation as well as a sale of their bonds!

---

beyond the terms of office of the members of such body. In the absence of some other ground of avoidance, such a contract is binding upon the municipality and may not be summarily canceled by a successor council. [Citing many cases]."

The majority opinion attempts to justify its conclusion (1) by, in effect, ignoring the provisions of the Parking Authority Law and (2) by analogizing and equating this three year contract with tenure under the Civil Service and the Teacher Tenure Acts. It is not even necessary to glance at the Teacher Tenure Acts or the Civil Service Acts to realize that a contract of employment for three years, without anything more, is as different from "tenure" in those Acts as day is from night. This is apparent from the majority opinion itself, which summarizes those Acts as "set[ing] forth in great detail the minimal requirements an employee must meet in order to secure initially government employment, the standards for advancement of such an employee, job classifications for remunerative purposes and the requisites for discharge." There are no such provisions in the Parking Authority Law.

The (Philadelphia) Parking Authority Law empowers, as we have seen, the Authority in two short sentences to appoint employees and fix their compensation and to make contracts which are convenient and necessary. To equate Scott's contract for a three year period with the tenure provided in voluminous and minute detail in the Teacher Tenure Acts and the Civil Service Acts is as farfetched as comparing and equating a little hill with Mt. Blanc.

I would affirm the judgment of the Court below.