IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alice Mason,                          :
                    Appellant         :
                                      :
            v.                        :     No. 117 C.D. 2022
                                      :
Philadelphia Parking Authority        :     Submitted: August 12, 2022


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  August 4, 2023

        Alice Mason (Appellant) appeals from the orders entered by the Court of
Common Pleas of Philadelphia County (trial court) on December 27 and 30, 2021,
which together granted summary judgment in favor of Appellee Philadelphia Parking
Authority (PPA) and dismissed Appellant's promissory estoppel and unjust enrichment
claims.[1]  After review, we affirm.

## I.      Facts

        This case has once before been before this Court, *see Mason v.
Philadelphia Parking Authority* (Pa. Cmwlth., No. 1242 C.D. 2019, filed August 12,
2020), 239 A.3d 1143 (Table), 2020 WL 4641646 (*Mason I*), and there we summarized

---

[1] The trial court initially granted PPA's motion by the order entered on December 27, 2021
(dated December 23, 2021).  To correct certain typographical errors, the trial court entered an
amended order on December 30, 2021 (dated December 29, 2021).  The amended order did not
otherwise modify the trial court's original disposition or rationale.

the material facts of the underlying dispute. *See id.*, slip op. at 1-4. We reiterate them below only to the extent necessary to dispose of the matters at issue in this appeal.

Appellant was employed with PPA for approximately 30 years. She held various titles and last worked in PPA's Taxi and Limousine Division (TLD), which regulates taxis and limousines within the City of Philadelphia (City). (Supplemental Reproduced Record (S.R.) at 185b-86b.)

In 2015, Transportation Network Companies (TNCs), such as UberX and Lyft, began operating within the City. (Reproduced Record (R.R.) at 79.) Anticipating shortfalls, PPA attempted to reduce budgetary issues within the TLD by asking retirement age "J-Plan" employees to either transfer their employment to another department within PPA or to enter the Deferred Retirement Option Plan (DROP)[2] retirement program. *Id.* at 80. J-Plan employees were singled out because the retro-pension contributions that TLD paid to the City were much higher than those of other employees' pension plans. *Id.*

On January 29, 2015, Appellant spoke with then-Executive Director of PPA, Vincent J. Fenerty, Jr. (Fenerty), to discuss her employment and retirement options in the face of these budgetary issues. *Id.* The next day, Appellant received a memorandum from Fenerty memorializing in writing the contents of their conversation. *Id.* at 81-82. In relevant part, Fenerty wrote:

> If you agree to enter the DROP program, enabling [PPA] to eliminate the extraordinarily high pension payments, I will [e]nsure that you remain at the TLD for the remainder of your employment with [PPA]. . . . [If] you do wish to enter DROP, you will keep [your] current TLD position for the duration of your four[-year] DROP period.

---

[2] *See* the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§ 895.101-895.1131.

*Id.* at 190. Appellant formally entered DROP on June 19, 2015, and continued working at the TLD until June 16, 2017, when she was informed that, effective July 1, 2017, her employment with TLD would be terminated. Appellant was advised to consider other employment and to apply for other open positions with PPA, which she did not do. She instead retired and currently is collecting her pension from PPA. (*Id.* at 85; S.R. at 76b, 89b.)

## II. Procedural History

Appellant filed a complaint against PPA in the trial court on March 26, 2018, asserting breach of contract, civil rights, and employment discrimination claims. (R.R. at 18.) On April 30, 2018, PPA removed the action to the United States District Court for the Eastern District of Pennsylvania (District Court). *Id.* at 19. After Appellant moved to dismiss the federal claims, the District Court remanded the matter to the trial court. Appellant then filed an Amended Complaint asserting claims for breach of contract (Count I), promissory estoppel (Count II), unjust enrichment (Count III), and violation of the Pennsylvania Wage Payment and Collection Law (WPCL)[3] (Count IV). *Id.* at 20. On April 29, 2019, PPA filed preliminary objections to the Amended Complaint, which the trial court overruled on July 9, 2019. *Id.* at 20, 23.

PPA appealed to this Court on August 8, 2019. On August 12, 2020, we dismissed PPA's appeal for lack of jurisdiction, concluding that the trial court's July 9, 2019 order was interlocutory and not otherwise appealable under the collateral order doctrine. *See Mason I*, slip op. at 13.

PPA thereafter filed a motion for judgment on the pleadings, which the trial court granted, in part, and dismissed Counts I (breach of contract) and IV (WPCL)

---

[3] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§ 260.1-.13, .45.

of the Amended Complaint, leaving only Counts II (promissory estoppel) and III (unjust enrichment) to proceed. (R.R. at 31, 163.)

After discovery was completed, PPA filed a motion for summary judgment seeking dismissal of Counts II and III. *Id*. at 35. By order and amended order entered December 27 and 30, 2021, the trial court granted PPA's motion and dismissed Counts II and III. *Id.* at 37-38.

On January 3, 2022 Appellant filed a motion for reconsideration, which the trial court denied by order dated February 9, 2022, and entered on February 15, 2022. *Id*. at 38-39. In the interim, on January 27, 2022, Appellant timely filed a notice of appeal to this Court. *Id.* at 39.

### III. Discussion

Although Appellant argues that the trial court erred in granting PPA's motion for summary judgment and dismissing her promissory estoppel and unjust enrichment claims, it is unclear whether Appellant contends that genuine issues of material fact remain on those claims or, alternatively, that the question before us regarding the viability of the claims is a pure question of law. *See* Appellant's Br. at 3, 10, 23. However, and in any event, we conclude that, under the Pennsylvania Supreme Court's decision in *Scott v. Philadelphia Parking Authority*, 166 A.2d 278 (Pa. 1960), and its progeny, Appellant's promissory estoppel and unjust enrichment claims fail as a matter of law and the entry of summary judgment was appropriate.

We acknowledge that this result may appear harsh and, in some circumstances, might work contrary to the apparent equities of a particular case. *See Scott*, 166 A.2d at 283-85 (Bell, J., dissenting). Nevertheless, and as Appellant at times appears to concede, *see* Appellant's Br. at 23, we are bound by the Pennsylvania Supreme Court's decision in *Scott* and subsequent Pennsylvania appellate decisions,

4

all of which have concluded that, absent legislative authorization, contractual and quasi-contractual guarantees of tenured employment for public, at-will employees are not enforceable and are void *ab initio* as *ultra vires* actions of a municipal corporation. *See Stumpp v. Stroudsburg Municipal Authority*, 658 A.2d 333, 335 (Pa. 1995); *Bolduc v. Board of Supervisors of Lower Paxton Township*, 618 A.2d 1188, 1190-91 (Pa. Cmwlth. 1992); *Guerra v. Redevelopment Authority of the City of Philadelphia*, 27 A.3d 1284, 1292 (Pa. Super. 2011);[4] *Mason I*, slip op. at 7-11 & n.10; *Terrick v. Munhall Sanitary Sewer Municipal Authority* (Pa. Cmwlth., Nos. 151 & 526 C.D. 2018, filed December 18, 2018), 2018 WL 6613749, slip op. at 11-13 & n.11;[5] *Wilson v. County of Montgomery* (Pa. Cmwlth., No. 2463 C.D. 2020, filed November 17, 2011), 2011 WL 10876908, slip op. at 5-7 & n.2.

Contrary to Appellant's arguments in this appeal, we have not recognized, and indeed have rejected, the creation of exceptions to the at-will employment rule via quasi-contractual legal theories like promissory and equitable estoppel and unjust enrichment. Thus, even assuming that Appellant otherwise had alleged in her Amended Complaint and established in the record sufficient facts to support her promissory estoppel and unjust enrichment claims (which we need not here decide), the claims may not proceed in this context.[6] As long as *Scott* remains good law, as it

---

[4] Although not binding, opinions of our sister appellate court are valid persuasive authority. *See In re Superior-Pacific Fund, Inc.*, 693 A.2d 248, 253 (Pa. Cmwlth. 1997).

[5] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value but not as binding precedent. *See* section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[6] We note that this case does not involve, as do the bulk of the cases relied upon by Appellant, "professionals specifically hired to perform special services pursuant to a contract, explicit employment contracts offered by private sector employers, civil service employees[,] or collective bargaining agreements." *Wilson*, slip op. at 5 n.2; *see also Scott*, 166 A.2d at 282.

now unquestionably does, we are constrained to follow it. We may not, as Appellant suggests, conclude that "[*Scott*] is wrong in both law and fact" and "move towards the dissent in [*Scott*] as controlling." Appellant's Br. at 23. That conclusion and move are prerogatives of the Pennsylvania Supreme Court.

## IV. <u>Conclusion</u>

Both Appellant's promissory estoppel and unjust enrichment claims, which sound in quasi-contract, fail as a matter of law. We accordingly affirm the trial court's orders for the reasons set forth in its well-reasoned opinion.

_____
PATRICIA A. McCULLOUGH, Judge

6

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alice Mason, :
    Appellant :
         :
    v. : No. 117 C.D. 2022
         :
Philadelphia Parking Authority :

## ***ORDER***

AND NOW, this 4th day of August, 2023, it is ORDERED that the orders of the Court of Common Pleas of Philadelphia County, Pennsylvania (C.C.P. Philadelphia, March Term No. 03110, filed December 27, 2021, and December 30, 2021), are AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| ALICE MASON | : | **MARCH TERM 2018** |
| | : | |
| **vs.** | : | **No. 03110** |
| | : | |
| PHILADELPHIA PARKING AUTHORITY | : | **Control No. 21070924** |

## AMENDED ORDER and OPINION

**AND NOW**, this 29th day of December, 2021, upon consideration of the motion for summary judgment filed by Defendant Philadelphia Parking Authority and the responses thereto, it is hereby **ORDERED and DECREED** that the motion is **GRANTED**. Count II (promissory estoppel) and Count III (unjust enrichment) of Plaintiff's amended complaint are **DISMISSED with prejudice.**

The original order erroneously stated, "Count IV (unjust enrichment)," instead of "Count III (unjust enrichment)." The court's contemporaneously issued opinion contains the same error on page 1. The first sentence of the opinion is hereby amended to read:

This court today entered a separate order granting the motion for summary judgment of Defendant Philadelphia Parking Authority (PPA) and dismissing with prejudice Count II (promissory estoppel) and Count III (unjust enrichment) of Plaintiff's amended complaint.

BY THE COURT:

LACHMAN, J.

ORDOP-Mason Vs Philadelphia Parking Authority

18030311000105

Case ID: 180303110

ALICE MASON             :    MARCH TERM 2018

                           :

vs.                       :    No. 03110

                           :

PHILADELPHIA PARKING AUTHORITY    :    Control No. 21070924

## OPINION

**Lachman, J.**                                   December 23, 2021

This court today entered a separate order granting the motion for summary judgment of Defendant Philadelphia Parking Authority (PPA) and dismissing with prejudice Count II (promissory estoppel) and Count IV (unjust enrichment) of Plaintiff's amended complaint. This opinion explains that decision.

## I. Factual and Procedural Background.

The facts and procedural background are taken from an earlier decision in this case by the Commonwealth Court:

> [Plaintiff] worked for PPA's Taxi and Limousine Division (TLD) for 30 years. In January 2015, then Executive Director Vincent J. Fenerty, Jr. (Fenerty) memorialized a conversation with Employee concerning her continued employment in the TLD in a memorandum (Memorandum). He advised her contribution to the TLD "has been outstanding [but] your pension requirements make your continued assignment there infeasible." After noting her continued employment with PPA was not in jeopardy, Fenerty confirmed his interest to retain Employee in the TLD. To that end, he made the following offer:
>
> > If you agree to enter the DROP [(Deferred Retirement Option Plans)] program, enabling [PPA] to eliminate the extraordinarily high pension payments, I will insure that you remain at the TLD for the remainder of your employment with the [PPA]. I am in no way insisting that you enroll in DROP at this time and if you elect not to do that I will offer you a position in another division. However, if you

1

Case ID: 180303110

do wish to enter DROP, you will keep [your] current TLD position for the duration of your four[-][year] DROP period.

[Plaintiff] entered the DROP program on March 18, 2015. Notwithstanding the language in the Memorandum that she was to keep her TLD position for the four-year DROP period, the PPA terminated her employment within two years, effective July 1, 2017.

Predicated on PPA's alleged breach of the Memorandum, [Plaintiff] filed a complaint asserting federal civil rights claims, including discrimination, as well as contractual claims against PPA in the Trial Court. PPA then removed the case to federal court based on the civil rights claims. After Employee moved to dismiss the federal claims, the matter was remanded to the Trial Court.

Subsequently, Employee filed an amended complaint against PPA in the Trial Court asserting the following claims: breach of contract (Count I); promissory estoppel (Count II); unjust enrichment (Count III); and a claim seeking liquidated damages and attorney fees under the WPCL (Count IV). [Plaintiff's] claims are based on her discharge from employment before the expiration of the four-year DROP period referenced in the Memorandum, which she characterizes as an employment contract.

PPA filed preliminary objections, including demurrers, asserting each claim depends on the existence of an employment contract and no such enforceable contract exists. PPA focused on its lack of statutory authorization to execute an employment contract under the Law, stating "that unless the legislature expressly and explicitly provides for tenure for public employment, any employment contract that abrogates the doctrine of at-will employment (such that plaintiff is attempting to assert herein) is void and unenforceable as an *ultra vires* action as a matter of law." In addition, the PPA challenged the application of the WPCL to governmental authorities generally as they do not fall within the statutory definition of "employer" in Section 2.1 of the WPCL, 43 P.S. § 260.2a.

Following briefing and argument, the Trial Court [Judge Michael Erdos] issued an order on July 9, 2019, overruling PPA's preliminary objections. PPA filed a notice of appeal to this Court based on its status as a governmental body.

2

Case ID: 180303110

*Mason v. Philadelphia Parking Auth.*, 239 A.3d 1143 (Table), 2020 WL 4641646 at *1-*2 (Pa. Cmwlth August 12, 2020) (citations to the record omitted) (unpublished memorandum that may be cited for its persuasive value and for law of the case).[1,2]

Judge Erdos granted in part PPA's motion for judgment on the pleadings on October 21, 2020. He dismissed Count I (breach of contract) and Count IV (Wage Payment and Collection Law), and left Count II (promissory estoppel) and Count III (unjust enrichment) to proceed.

After discovery was completed, PPA filed the present motion for summary judgment seeking to dismiss Counts II and III of the amended complaint.

---

[1]    (a) An unreported opinion of this Court may be cited and relied upon when it is relevant under the doctrine of law of the case, res judicata or collateral estoppel. Parties may also cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.

Commonwealth Court Internal Operating Procedures § 414(a). *See also*, Pa.R.A.P. 126(b) & (d) (non-precedential unreported memorandum opinions of the Commonwealth Court filed after January 15, 2008, may be cited for their persuasive value, and "may always be cited if relevant to the doctrine of law of the case, res judicata, or collateral estoppel.").

[2] PPA appealed the order overruling its preliminary objections to the Commonwealth Court under the collateral order doctrine. The Commonwealth Court dismissed the appeal because the collateral order doctrine did not apply. In passing, the court discussed some of the issues raised in the complaint.

3

Case ID: 180303110

## II. Discussion.

### A. Supreme Court's construction of the prior statute applies to the current statute.

The present case involves a public employee whose employment is at-will and subject to the requirements of the statutes creating the PPA. Many of the cases relied upon by the Plaintiff do not have those legislative constraints and are inapposite to the present case.

The foremost constraint is the language of the statute that created the PPA. The current version of the PPA was created in 2004 when the legislature amended the Parking Authorities Law. It took away from the Pennsylvania Public Utilities Commission the responsibility for regulating taxicab and limousine service in Philadelphia, and gave it to the PPA. The new statute provides:

> **(d) Powers.--** An authority has all powers necessary or convenient for the carrying out of the purposes under this section, including:
> \* \* \* \* \*
> (8) To appoint officers, agents, employees and servants, to prescribe their duties and to fix their compensation.
> \* \* \* \* \*
> (13) To make contracts and to execute instruments necessary or convenient for the carrying on of its business.

53 Pa.C.S. § 5505(d)(8) & (13). That language is substantially identical to the language in the 1947 enabling legislation that created the PPA. *Mason v. Philadelphia Parking Auth.,* 2020 WL 4641646 at *5.

> Under its enabling legislation, ... the Authority is granted 'all powers necessary or convenient for the carrying out of the aforesaid purposes' including the power '* * * (7) To appoint officers, agents, employees and servants; to prescribe their duties and to fix their compensation;' and the power '* * * (10) To make contracts of every name and nature, and to execute all instruments necessary or convenient for the carrying on of its business.'

4

Case ID: 180303110

*Scott v. Philadelphia Parking Auth.,* 166 A.2d 278, 280 (Pa. 1960) (citations omitted).

In *Scott,* our Supreme Court construed the predecessor statute and held that it barred the PPA from offering employment contracts to its employees. 166 A.2d at 279.

The plaintiff in *Scott,* was the first managing director of the PPA. After he was discharged, he brought an action in assumpsit to recover monies due under his three-year employment contract with the PPA. The Supreme Court held that PPA's enabling legislation quoted above did not permit employment contracts. "[T]he making of the contract in the first place was beyond the power of the Authority and hence initially invalid." 166 A.2d at 280. Instead, an employee of PPA "takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." *Id.*

"Tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace." 166 A.2d 281. "Furthermore, where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating." *Id.*

> Where, then, is the legislative expression that the Authority has the power to create tenure by contract?
>
> The power granted to the Authority under its enabling legislation is to *appoint* officers, employees and agents and to fix their compensation, *not* to enter into contracts of employment. Clearly, absent the contract, the Authority would have had the power to discharge the appellee summarily. If the Authority has the power to contract away this right which under sound principles of law and public policy is fundamental to a scheme of good government, it must be set forth expressly in the enabling legislation. A studied examination of the Act of June 5, 1947, discloses that not to be the case here.
>
> A power to confer tenure by contract most assuredly does not derive from the general grant of powers necessary and convenient to carry out the purposes of the Authority, nor from the general power to make contracts of

5

Case ID: 180303110

every name and nature. Each of these grants of broad power relates to those other powers necessary to carry on the business and proprietary functions of the Authority and cannot be read to include the power to contract away the right of summary dismissal. Similarly, we are not here concerned with contracts for work on particular and specific projects being carried out by a governmental body which might necessitate the temporary services of some specialist. The contract here called for the employment on an annual basis of a close and confidential employee of a public body responsible for its daily management and supervision. As such, it directly concerned the organizational scheme of the Authority and had to accord with the legislative mandate. The enabling act calls for **appointed** officers, agents and employees necessarily responsible to the members of the Authority, themselves appointees, all of whom are subject to summary dismissal. Since no legislative authority exists which permits a contract of this nature, the instant contract is invalid and unenforceable in its entirety.

\* \* \* \* \*

In sum, the act of the prior members of the Authority in entering into an employment contract with the appellee was beyond their power. The contract was therefore invalid, and appellee may not maintain this claim in assumpsit.

166 A.2d at 282 & 283 (emphasis in the original, citations omitted).

Because the enabling language in the predecessor and current statutes are the same, "the prior construction of the same language by the Supreme Court 60 years ago in *Scott* stands." *Mason,* 2020 WL 4641646 at *5 n.9, *citing* 1 Pa.C.S. § 1922(4) ("when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language"). Thus, *Scott* "retains vitality for the proposition that agreements with public employees are beyond a municipal authority's power and void *ab initio.*" *Id.,* n.10 (citing cases).

6

Case ID: 180303110

The Commonwealth Court did not have to reach the merits of the substantive claims Plaintiff pled in the amended complaint in order to decide the question of the applicability of the collateral order doctrine. However, it stated in dicta:

> Although we do not reach the merits, to the extent the breach of contract is predicated on a guarantee of employment for the four-year DROP period, it bears emphasis that Section 1104 of the Municipal Pension Plan Funding Standard and Recovery Act explicitly states: "Participation in a DROP does not guarantee the DROP participant's employment by the local government during the specified period of the DROP." Section 1104 of the Act, added by the Act of September 18, 2009, P.L. 396, 53 P.S. § 895.1104. Based on this provision, this Court greets with skepticism the merits of Employee's breach of contract claim.

*Mason,* 2020 WL 4641646 at *5 n.10.

### B. The memorandum upon which Plaintiff's claims are based, is an employment contract that is void under the *Scott* and *Mason* cases.

The memorandum at issue is from Vincent J. Fenerty, Jr., who was then the executive director of the PPA, to the Plaintiff, and dated January 30, 2015. It memorializes a conversation they had the day before. It states

> Per our conversation yesterday, I wanted to review the issues we discussed.
>
> As you are aware, there are significant financial constraints on the budget in the Taxicab & Limousine Division. While your contribution to the Division has been outstanding, your pension requirements make your continued assignment there infeasible. I also indicated that your employment with the Authority is not in jeopardy and that I would find a similar position for you. You expressed a desire to stay in the TLD so we explored an option that would make that possible.
>
> If you agree to enter the DROP program, enabling the Authority to eliminate the extraordinarily high pension payments, I will insure that you remain at the TLD for the remainder of your employment with the Authority. I am in no way insisting that you enroll in DROP at this time and if you elect not to do that I will offer you a position in another division. However, if you do wish to enter DROP, you will keep current TLD position for the duration of your four DROP period.
>
> If you have any questions or wish to discuss this further, please contact me.

7

Case ID: 180303110

Plaintiff contends that this memorandum evidences PPA's agreement to continue to employ her in the Taxicab & Limousine Division for the entire four years she was in the DROP program. The earlier decision in this case by the Commonwealth Court notes that such a guarantee of employment for the four-year DROP period, would contravene Section 1104 of the Municipal Pension Plan Funding Standard and Recovery Act which explicitly states: "Participation in a DROP does not guarantee the DROP participant's employment by the local government during the specified period of the DROP." 53 P.S. § 895.1104. *Mason,* 2020 WL 4641646 at *5 n.10.

As the Supreme Court's decision in *Scott* makes clear, such a tenure for a fixed period of time violates the PPA's enabling statute which does not permit any deviation from the at-will employment relationship. Because "the act of the prior members of the Authority in entering into an employment contract with the appellee was beyond their power[,] [t]he contract was therefore invalid." 166 A.2d at 283. *See, Stumpp v. Stroudsburg Mun. Auth.,* 658 A.2d 333, 334 (Pa. 1995) ("[T]he Authority simply does not have the power under law to enter into contracts of employment that contract away the right of summary dismissal, since the power to confer tenure must be expressly set forth in the enabling legislation.").

Mr. Fenerty and everyone else in the PPA, lacked the authority or power to offer guaranteed employment to the Plaintiff. "A municipality … **'cannot be bound for an act of its agent in excess of its corporate powers, or in violation of positive law, or for an act requiring legislative or executive action.'"** *Guerra v. Redev. Auth. of City of Phila.,* 27 A.3d 1284, 1290 (Pa. Super. 2011), *quoting Ervin v. City of Pittsburgh,* 14 A.2d 297, 301 (Pa. 1940) (internal citations omitted) (emphasis in *Guerra*).

8

Case ID: 180303110

In *Wilson v. Cty. of Montgomery,* No. 2463 C.D. 2010, 2011 WL 10876908 (Pa. Cmwlth Nov. 17, 2011) (unpublished memorandum that may be cited for its persuasive value), the working relationship between two County employees had seriously deteriorated. They

> were required to attend a "mediation" to resolve their difficulties. At the conclusion of the mediation, a written agreement or memorandum (the Memorandum) was drafted covering all aspects of Wilson's employment relationship with Grib. The Memorandum stated that the women had 30 days to improve their working relationship or face termination, with "no exceptions or excuses. This is their final notice." Both women signed the Memorandum which stated "I agree to the terms listed in this memo and understand that any violation or incident will result in termination of my employment." One year later, Wilson and Grib were involved in another work incident and were subsequently [terminated, as were Wilson's medical benefits].

*Wilson,* 2011 WL 10876908, at *1. Wilson sued, asserting claims for breach of express contract for employment, breach of collateral contract for employment, promissory estoppel, and equitable estoppel, and sought preliminary and permanent injunctive relief. *Id.*

> Wilson alleged that the Memorandum was an express contract for employment with the County because both parties bargained for and supplied consideration for the new employment agreement. She also argued that the Memorandum contained an implied for-cause termination provision covering all aspects of her working relationship with Grib. According to Wilson, she did not violate the terms of the Memorandum; rather, the County breached the employment contract by terminating her employment without cause. Wilson relied upon the Memorandum and the alleged changes in the material terms of her employment that it brought about, and the County knew or had reason to know of her reliance. Wilson alleged that she suffered physical harm and injury due to the actions of the County because her medical benefits were terminated and she was unable to continue treatment for her multiple sclerosis and cerebral meningioma.

*Id.* The trial court denied injunctive relief and dismissed the complaint with prejudice.

9

Case ID: 180303110

On appeal, Wilson stressed that the Memorandum was an employment contract. Commonwealth Court disagreed, because "public employers such as the County are not authorized to enter into employment contracts which would exempt their employees from at-will status unless this power has been expressly conferred by statute," and such a power had not been conferred upon the county. *Id.* at *3 citing **Scott** and **Stumpp.**

"Even if the Memorandum Wilson signed could be construed as an employment contract, the County acted beyond its powers by entering into such an agreement, making it void and unenforceable as an *ultra vires* act of the County." *Id.* at *3, *citing **Bolduc v. Bd. of Sup'rs of Lower Paxton Twp.,*** 618 A.2d 1188, 1191 (Pa. Cmwlth 1992) (because the township lacked the authority to grant Bolduc guaranteed employment for a fixed term, the employment contract represented an *ultra vires* act and was void and unenforceable).

"An *ultra vires* action is one that is performed without authority to act and beyond the scope of legal authorization. When a government entity enters into a contract beyond its authority, the contract is void and unenforceable." **Clairton Slag, Inc. v. Dep't of Gen. Servs.,** 2 A.3d 765, 782 (Pa. Cmwlth. 2010) (citations omitted).

Mr. Fenerty lacked the authority to bind the PPA to an employment contract retaining an at-will employee for a four-year term. His action was *ultra vires* and the terms of the January 30, 2015 memorandum are void and unenforceable.

The present case does not involve the possession and improper exercise of certain enumerated powers. Here, PPA completely lacked **any** power to create anything other than at-will employment relationships with its employees. Despite Appellant's contentions to the contrary, PPA did not improperly exercise some legitimate authority. **Guerra,** 27 A.3d at 1292. Consequently, the memorandum relied upon by the Plaintiff is invalid.

10

Case ID: 180303110

## C. The promissory estoppel claim must be dismissed.

"To state a claim for promissory estoppel, there must be a promise by one party to another, and detrimental reliance by the other party on that promise. *See* Restatement (Second) Contracts § 90 (Am. Law Inst. 1979); *Travers v. Cameron Cty. Sch. Dist.*, 544 A.2d 547, 550 (Pa. Cmwlth. 1988) (promissory estoppel is "a vehicle by which a promise may be enforced in order to remedy an injustice")." ***Mason,*** 2020 WL 4641646 at *5 n.11.

"The doctrine embodied in [Section] 90 of the Restatement (Second) of Contracts, the doctrine of promissory estoppel, is the law of Pennsylvania. It is also the law of Pennsylvania that the Commonwealth or its subdivisions and instrumentalities **cannot be estopped by the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts which require legislative or executive action.**" ***Guerra,*** 27 A.3d at 1292 (emphasis added, citation omitted). *See also, **id.,*** at 1293 ("emphasizing that the doctrine of promissory estoppel cannot be asserted to bind a government agency beyond the powers bestowed in its enabling statute.").

In ***Guerra***, the Urban Redevelopment Law did not grant RDA the authority to create anything other than at-will employment relationships with its employees, including its general counsel. However, for forty-five years RDA's Rules and Regulations for Personnel Administration had stated that an employee could not be terminated "without cause." As a defense to former counsel's claim for breach of contract, RDA asserted that it's Rules and Regulations did not create an employment contract under which counsel could be terminated only for cause. The Superior Court held that the doctrine of promissory estoppel did not apply and affirmed judgment on the pleadings in favor of the

11

Case ID: 180303110

RDA. The Rules and Regulations "did not create an enforceable contract of employment or tenure under either contract law or estoppel theory." 27 A.3d at 1293-1294.

> More importantly, equitable estoppel has been affirmatively rejected by this Court as an exception to the at-will rule. In *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990), we held that "[t]he doctrine of equitable estoppel is not an exception to the employment at will doctrine. An employee may be discharged with o[r] without cause, and our law does not prohibit firing an employee for relying on an employer's promise." *Id.* at 95, 569 A.2d at 348. Thus, the issue of whether Appellee detrimentally relied on any promises of the Authority is simply not relevant in determining whether Appellee has a protectable property interest in his employment.

*Stumpp v. Stroudsburg Mun. Auth.,* 658 A.2d 333, 336 (Pa. 1995).

The Commonwealth Court has recognized that the theory of promissory estoppel is **not** an exception to the at-will employment rule. As a matter of law, an at-will employee cannot prove a claim for promissory estoppel because she cannot prove the required element of detrimental reliance.

> [O]ur Supreme Court has definitively stated that detrimental reliance on an employer's promise is not relevant in the context of at-will employment and that firing an employee for relying upon an employer's promise is not prohibited. **Such language clearly precludes a claim for promissory estoppel because an employee cannot meet all of the required elements to establish a claim.** In addition, exceptions to [the at-will] rule have been recognized in only the most limited of circumstances where discharges of at-will employees would threaten clear mandates of public policy. Therefore, the trial court properly rejected the theory of promissory estoppel as an exception to the at-will employment rule.

*Terrick v. Munhall Sanitary Sewer Mun. Auth.,* No. 151 C.D. 2018, 2018 WL 6613749, at *5 n.11 (Pa. Cmwlth. Dec. 18, 2018) (quotations omitted, emphasis added) (unpublished memorandum that may be cited for its persuasive value), *quoting **Wilson v. Cty. of Montgomery,*** No. 2463 C.D. 2010, 2011 WL 10876908, at *3 (Pa. Cmwlth Nov. 17, 2011) (unpublished memorandum that may be cited for its persuasive value).

12

Case ID: 180303110

Plaintiff cannot prove all of the elements of a promissory estoppel cause of action. Therefore, summary judgment is appropriate on that claim.

### D. The claim for unjust enrichment must be dismissed.

A claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another.

The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008) (internal citations and quotation marks omitted).

"To state an unjust enrichment claim, there must be: '(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Mason,* 2020 WL 4641646 at *5 n.11, *quoting Limbach Co., LLC v. City of Philadelphia,* 905 A.2d 567, 575 (Pa. Cmwlth 2006) (citation omitted).

13

Case ID: 180303110

It has long been held that a quasi-contract theory of unjust enrichment or restitution may be had against a municipal entity, but not if it were based on an illegal or *ultra vires* contract.

> "Municipal repudiation of honest indebtedness which the municipality intended to contract and **could have lawfully contracted**, is no more to be tolerated than individual repudiation of honest indebtedness merely because it was not incurred in pursuance of a duly executed express contract, **unless the municipal charter or the statutes prohibit the municipality from incurring any liability by implication.**"

> Cases which have denied recovery on a quasi-contract basis have done so, not because such recovery cannot be had against a municipality as it can against an individual, but for other overriding reasons. In some cases, because the municipality or **an agency of a municipality had no authority to legally contract in the first place** for the benefit received, the court concluded that **had there been a contract, it would have been ultra vires, either beyond constitutional or statutory authority.**

*J. A. & W. A. Hess, Inc. v. Hazle Twp.,* 400 A.2d 1277, 1279 (Pa. 1979) (emphasis added, citations omitted).[3] However,

> where a municipality or other local agency of government has voluntarily accepted and retained the benefits of **a contract which it had the power to make but which was defective in the method of its execution and consequently invalid,** the party who, by furnishing labor or material, has conferred such benefits may recover compensation therefor in a suit, not on

---

[3] In *J. A. & W. A. Hess,* the plaintiff contracted to deliver 100 tons of gravel for use by the township in the construction of roads at price of $3.50 per ton. The plaintiff actually delivered over 6,000 tons to the township. The Supreme Court held that the plaintiff was entitled to recover payment from the township, not to exceed $3.50 per ton, on a quasi-contract basis. "In this case, none of the reasons given in prior cases for not permitting a quasi-contract recovery is present. The appellee had the constitutional and statutory authority to contract for the purchase of approximately 6,000 tons of gravel, had it chosen to do so. There is no contention that the municipality did not receive a benefit, nor is there any claim that subterfuge was involved or that the contractor assumed the risk of the municipality needing more gravel than 100 tons. Under these circumstances, it was error to deny appellant relief under a quasi-contract recovery." 400 A.2d at 1279–80.

14

Case ID: 180303110

the invalid contract itself, but upon a *quantum valebat, quantum meruit,* or for money had and received[.]

*J. A. & W. A. Hess,* 400 A.2d at 1279, *quoting Luzerne Township v. Fayette Co.,* 199 A. 327, 330 (Pa. 1938) (emphasis added).

Plaintiff argued that Mr. Fenerty acted within his authority to "appoint officers, employees and agents and to fix their compensation" by virtue of 53 Pa.C.S. § 5505(d)(8). That argument has been thoroughly rejected by *Scott* and *Mason.* Plaintiff stresses the financial benefit her decision to enter DROP gave the PPA. This court never reached that issue because the memorandum which forms the basis for Plaintiff's claim for unjust enrichment was wholly *ultra vires* and void *ab initio.* Therefore, Plaintiff cannot recover in quasi-contract. Summary judgment is appropriate on Plaintiff's claim for unjust enrichment.

**BY THE COURT:**

LACHMAN, J.

15

Case ID: 180303110